**FILED**

NOV - 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DeLarse MONTGOMERY, JR.,<br>4220 Willoby Road<br>Marbury, Maryland 20658,<br><br>      Plaintiff,<br><br>         v.<br><br>ELAINE L. CHAO,<br>Chairwoman,<br>  Pension Benefits Guaranty Corp.,<br>1200 K Street, N.W.,<br>Washington, DC 20005-4026,<br><br>      and<br><br>BRADLEY B. BELT,<br>Executive Director,<br>  Pension Benefits Guaranty Corp<br>1200 K Street, N.W.,<br>Washington, DC 20005-4026,<br><br>      Defendants. | Civil Action No.<br><br><br>CASE NUMBER 1:05CV02157<br><br>JUDGE: Ricardo M. Urbina<br><br>DECK TYPE: Employment Discrimination<br><br>DATE STAMP: 11/03/2005 |

*JURY ACTION*

### COMPLAINT
### (Employment Discrimination and Retaliation)

### Introduction

1.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.*, and as further amended by Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to remedy acts of discrimination in employment practices by the Pension Benefit Guaranty Corporation against plaintiff because of his race (African American) and/or his color (black) and/or his sex (male) and/or in retaliation for his having engaged previously in protected civil rights activities, and pursuant to the Age

Discrimination in Employment Act of 1967, as amended by the Fair
Labor Standard Amendments of 1974, 29 U.S.C. § 633a, to remedy acts
of discrimination in employment practices by the Pension Benefit
Guaranty Corporation against plaintiff because of his age (58
years). This action is also brought pursuant to the Equal Pay Act
of 1963, as amended by the Fair Labor Standard Amendments of 1974,
29 U.S.C. §206(d), to seek redress for the sex-based pay
differential which limited plaintiff's pay compared to a female who
performed equal work immediately prior to plaintiff being assigned
to essentially the same duties and responsibilities.

### Jurisdiction

2.    This Court has subject matter jurisdiction over the
claims raised herein pursuant to Title VII of the Civil Rights Act
of 1964, as amended, under 42 U.S.C. § 2000e-16(c), (hereinafter
"Title VII"), plaintiff having exhausted all available
administrative remedies on each of his claims as of the date the
instant civil action has been filed in that more than 180 days has
elapsed since the filing of each of the following formal
administrative complaints of unlawful employment discrimination by
plaintiff (which administrative complaints taken together contain
all claims made in this civil action) without a final decision
having been received: PBGC-03-10, PBGC No. 05-04, and PBGC No. 05-
07.    With regard to the Age Discrimination in Employment Act
(hereinafter "ADEA") claims, and the claims brought pursuant to the
Equal Pay Act, subject matter jurisdiction is founded upon 29

-2-

U.S.C. § 216(b) (Fair Labor Standards Act) and 28 U.S.C. § 1331
(Federal Question).

### Venue

3.    Venue is proper in the District of Columbia as the
actions that form the basis of the claims contained in this case
occurred here, plaintiff's personnel records at the Pension Benefit
Guaranty Corporation are maintained here, and plaintiff worked
and continues to work for the Pension Benefit Guaranty Corporation
in this judicial district.

### Parties

4.    Plaintiff, DeLarse Montgomery, Jr., is a black, African
American male citizen of the United States and a resident of the
State of Maryland who is 58 years of age as of June 26, 2005.    He
is currently employed, and at all times relevant to this complaint
was employed, by the Pension Benefit Guaranty Corporation in its
Washington, D.C. headquarters.    He is currently a GS-501-12 (Step
10) Financial Analyst with the Pension Benefit Guaranty
Corporation.

5.    Defendants are Elaine L. Chao and Bradley B. Belt, the
Chairman and the Executive Director, respectively, of the Pension
Benefit Guaranty Corporation (hereinafter "PBGC").    Either one or
the other (or both acting together) is the head of the PBGC, which
is an agency within the Executive Branch of the Government of the
United States that has had more than 500 employees in at least 20
calendar weeks during the past year.    In short, as its Chairman or
as its Executive Director, Ms. Chao or Mr. Belt, or both together,

are responsible for the personnel actions, omissions and practices within PBGC.  Each is here sued only in her/his official capacity as head of PBGC.

## Statement of Facts

6.    Plaintiff is a 58 year old African American male.  He is currently a GS-501-12 Financial Analyst with the PBGC's Investment Accounting Branch of the Controller Operations Division, Financial Operations Department ("FOD").

7.    Plaintiff has been in that branch since February 1996, when he was assigned there as a GS-501-11.  he was promoted to GS-12 in August of 1998 pursuant to a settlement of an EEO claim in federal court litigation (Civil Action No. 96-1333 EGS (D.D.C.)).  Since that settlement, and under its terms, he took 24 college credit hours in accounting at the PBGC's expense.

8.    In August of 2001 Christine Thomas, a younger white female supervisory Accountant, GS-510-13, at the PBGC, who had been assigned the duty of Contracting Officer's Technical Representative ("COTR") for the Bert Smith Professional Services contract, resigned.  From that point (August 2001) through February 2002, the COTR duties on that contract were performed by the Branch Chief, Cynthia Rhett Adams (B/F), a GS-510-14.  In October 2001, at the plaintiff's annual performance review meeting, Adams informed him that he would be taking on the COTR duties with regard to the Bert Smith Professional Services contract.  This actually came to pass in March 2002, at which point plaintiff attended the course given for COTRs and began performing the COTR duties previously performed

by Christine Thomas as a GS-13 level employee, though plaintiff continued to be paid at the lower GS-12 level. The work he performed was equal to the work previously performed by a female employee of PBGC and the performance of this work by plaintiff required the same skill, effort and responsibility as when it was performed by the female PBGC employee, and both plaintiff and the female who preceded him in performing this work each worked under the same working conditions.

9.    In July of 2002, plaintiff asked that his performance standards and his position description ("PD") be updated to reflect his new COTR duties and responsibilities. This request was made during his quarterly performance review with Adams. During his annual evaluation in October 2002, Adams informed plaintiff that PBGC's Human Resources department ("HR"), in the person of Stephanie Russell, a supervisor in HR's Operations Division, had advised that a PD and standards need not be changed to reflect COTR duties as long as it is mentioned in the performance evaluation narrative. Plaintiff's pay continued to be at the lower GS-12 pay level.

10.    During a later quarterly performance review, in January 2003, plaintiff again asked Adams to have his PD and performance standards changes to reflect a rather extraordinary accretion of duties: his COTR duties were growing -- first two additional contractors were involved and then two more, and by early 2003 plaintiff was COTR for eight contractors. He also indicated to Adams that he thought the increased duties and responsibilities

merited a higher grade.    That same month, plaintiff received a requested copy of his PD from the Administrative Assistant in FOD's Administrative Division.    Plaintiff continued to be paid at the lower GS-12 grade level.

11.    In April 2003, at his next quarterly review, plaintiff presented his Branch Chief (Adams), with a request for promotion based on accretion of duties.    In May 2003, he inquired of her concerning the status of his accretion of duties promotion request. Adams informed him that she had only briefly discussed it with her boss, the Division Manager, Wayne McKinnon, that McKinnon had not gotten back to her, and that she had not fully pursued what she needed to do regarding such a promotion.    Adams said she had a meeting scheduled with the Department Director, Theodore Winters, and would discuss the matter of an accretion of duties promotion for plaintiff with him.    Plaintiff still continued to be paid at the lower GS-12 grade level.

12.    Having heard nothing concerning his accretion of duties promotion request, plaintiff contacted an EEO counselor concerning his claim of discriminatory failure to promote based on accretion of duties.    This was in June 2003.    On September 9, 2003, he finally received a response to his accretion of duties promotion request from Adams.    It was negative.    Plaintiff timely filed a formal EEO administrative complaint on October 1, 2003, charging PBGC management with race/sex/color/age discrimination in refusing his request for promotion to the GS-13 level based on accretion of duties; in that formal administrative complaint, plaintiff also

charged PBGC management with violating the Equal Pay Act by paying him less to perform those COTR duties than it had to female employees (PBGC-03-10). Plaintiff pay continues through the filing of this civil action to be at the lower GS-12 grade level.

13. A "desk audit" that PBGC management insisted be conducted into plaintiff's then-current job as a pre-condition to mediation on his EEO administrative complaint revealed that plaintiff's PD had never been updated since the settlement of his earlier EEO civil action and that it did not actually reflect his duties as was required under the terms of the settlement agreement by which that earlier litigation had ended. Moreover, the "desk audit" also brought to like that documents in his Official Personnel File ("OPF") revealed that his promotion to the GS-12 was a result of the settlement of his earlier EEO case, which was not to be the case under the settlement terms. In light of the conduct of and the revelations from the "desk audit" required by PBGC, plaintiff asked that pre-investigation mediation ("ADR") be cancelled and that the EEO investigation proceed. Which it did.

14. While the administrative EEO claims concerning PBGC's failure to promote plaintiff based on accretion of duties was in processing, plaintiff's applied for a GS-13 Accountant position in his own unit, the Investment Accounting Branch ("IAB"). PBGC management indicated that he was not minimally qualified for that job. When plaintiff "made a fuss" by asking for the reasons supporting the conclusion that he was not qualified for the position, management cancelled the vacancy announcement and re-

advertised for a GS-12/13 Accountant.  Upon doing so, management found plaintiff ineligible for that job -- claiming he did not meet minimum qualifications -- and chose a younger Black female from outside the government for the position.  Plaintiff time filed another formal EEO administrative complaint on this late 2004 matter claiming race, color, sex and age discrimination, and retaliation for his having engaged in prior EEO activity (PBGC No. 05-04).

15.  Thereafter, plaintiff applied for a GS-13 Collection Analyst job which was in the 501 job series (plaintiff's own job series).  He applied both as a "status applicant" and a "non-status applicant" -- though he secured a stamped copy only of his non-status application.  Thereafter, PBGC management chose a less qualified younger white female for the position from the pool of status applicants, claiming plaintiff had not even applied for the job as a status applicant.  On March 1, 2005, plaintiff timely filed a third formal EEO administrative complaint claiming race, color, sex and age, and retaliation for his having engaged in prior EEO activity (PBGC No. 05-07).

### Statement of Claims

**Claim I -- Race, Color and Sex Discrimination:**

16.  In PBGC's treatment of plaintiff, defendant intentionally violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-16 *et seq.*, by discriminating against plaintiff based on his race and/or his color, and/or his sex.

17. As a direct and proximate result of PBGC's unlawful conduct in violating Title VII's prohibition against employment discrimination, plaintiff has suffered and continues to suffer economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, as well as personal and professional humiliation and career damage.

**Claim II -- Age Discrimination:**

18. In addition to PBGC's discriminatory treatment of plaintiff because of his race and/or his color and/or his sex, it also engaged in discriminatory treatment of plaintiff due to his age, thereby intentionally violating the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 633a.

19. As a direct and proximate result of PBGC's unlawful conduct in violating Title VII's prohibition against employment discrimination, plaintiff has suffered and continues to suffer economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, as well as personal and professional humiliation and career damage.

**Claim III -- Retaliation:**

20. In PBGC's treatment of plaintiff, defendant intentionally violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-16 *et seq.*, by retaliating against plaintiff

because he filed and successfully litigated discrimination claims against PBGC on his own behalf in the recent past.

21.  As a result of PBGC's unlawful conduct in violating Title VII's prohibition against retaliation for plaintiff's prior protected EEO conduct, plaintiff has suffered and continues to suffer economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, as well as personal and professional humiliation and career damage.

**Claim IV -- Equal Pay Act Violation:**

22.  In paying plaintiff less than his female predecessor in the COTR role since March 2002 (when plaintiff took over that work), PBGC has been in continuous violation of the Equal Pay Act, and said violation has been intentional and willful.

23.  As a consequence of PBGC's intentional and willful continuing violation of the provisions of the Equal Pay Act, plaintiff has lost pay equal to the difference between the salary he has earned since March 2002 through the present and what he would have learned during this period if he had been promoted to and paid at a rate of a GS-13 level employee; in additional he lost promotional opportunities and suffered humiliation and emotional pain as a consequence of receiving less pay for substantially equal work than had a female.

## Prayer for Relief

WHEREFORE, plaintiff prays that this Court order the following relief:

(a)   enter judgment in his favor and against defendant on each of the claims contained in this civil action;

(b)   award plaintiff compensatory damages against defendant to the fullest extent allowable under Title VII, with interest thereon;

(c)   award plaintiff an amount equal to the back pay due him as liquidated damages under the ADEA;

(d)   award plaintiff back pay from March 2003 to the present equal to the pay differential between his pay at a GS-12 level and the pay at an appropriate step of the GS-13 level pursuant to the Equal Pay Act, and an additional amount equal to this back pay award as liquidated damages;

(e)   order defendant to promote plaintiff to an appropriate GS-13 level position with full back pay (with interest thereon) and other benefits, retroactive to the earliest date claimed;

(f)   order defendant to correct all PBGC records, including plaintiff's official personnel folder ("OPF"), to accord with the relief order by the Court and to purge all references in such documents to this civil action or the earlier civil action, and the administrative EEO complaints that proceeded them;

(g)  enjoin defendant from future retaliation and discrimination against plaintiff;

(h)  award Plaintiff his costs of this action and the administrative complaints that preceded it, including reasonable attorneys' fees, with interest thereon, pursuant to 42 U.S.C. Section 2000e-5(k);

(i)  award such other and further relief as in the opinion of this Court the interests of justice may require.

### Jury Demand

Plaintiff hereby requests a trial by jury in the instant case on all issues of fact and on questioning pertaining to the amount of damages to be awarded.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO
1225 Eye Street, N.W.
Suite 1290
Washington, D.C.  20005
(202) 483-0300

Attorney for Plaintiff

- 12 -