Exh. 32
MSJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CYNTHIA GAIL OLEZENE,

    Plaintiff,

       v.

JOHN ASHCROFT,

    Defendant.

Civil Action No.  04-0633 (JDB)

## MEMORANDUM OPINION

        Plaintiff Cynthia G. Olezene claims discrimination based on race and sex in her non-selection for a one-year detail or temporary position as a GS-14 Supervisory Social Science Program Specialist (Acting Deputy Director) position. She also claims that the subsequent decision to cancel the detail was made in reprisal for her EEO activity.  Defendant has moved for summary judgment on the grounds that the detail was cancelled and no one ever filled the position, that plaintiff's reprisal claim was never exhausted administratively, and that plaintiff's EEO activity actually occurred after the alleged reprisal had taken place.  For the reasons explained below, defendant's motion for summary judgment will be granted on both the discrimination and reprisal claims.

### BACKGROUND

The essential facts are not in dispute.[1] Plaintiff is an African-American female who worked at the Department of Justice Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention ("OJJDP") from 1998 until June 30, 2004, when she voluntarily retired. Def.'s Statement ¶ 1. In June 2001, OJJDP sought to fill a competitive detail or temporary promotion not to exceed one year for a GS-14 Supervisory Social Science Program Specialist position (Acting Deputy Director). Def.'s Statement ¶¶ 2-3. Plaintiff sought that position.

Four OJP employees applied and were determined to be qualified for the position. Def.'s Statement ¶ 4. One individual -- Ms. Margaret Heisler -- was placed on a non-competitive certification list because she had already held a GS-14 position similar to the one being filled, and thus could transfer laterally without competing for a promotion. Def.'s Statement ¶ 5. Three individuals, including plaintiff, were placed on a competitive certification list for the GS-14 position; all were presently GS-13s who would require a promotion to fill the Acting Deputy Director position. Def.'s Statement ¶ 6. Only Ms. Heisler, a Caucasian, was interviewed, and she was recommended for the position. Def.'s Statement ¶¶ 7-8. Plaintiff was accordingly informed of her non-selection for the position on or about August 7, 2001. Def.'s Statement ¶ 9.

Paper work was prepared for the selection of Ms. Heisler as a lateral detail to OJJDP, but when a new Administrator of OJJDP was appointed on August 24, 2001, the proposed detail was placed "on hold" to permit the permanent Administrator, then pending Senate confirmation, the

---

[1] These facts are drawn from Defendant's Statement of Material Facts as to which There Is No Genuine Issue ("Def.'s Statement"). Plaintiff does not dispute these facts except to the extent noted. See Response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Response").

-2-

opportunity to consider reorganization of the office. Def.'s Statement ¶¶ 10-12. In late August

2001, Ms. Heisler's employing office, the Bureau of Justice Assistance, then asked for a

cancellation of the detail. Pet.'s Statement ¶ 13. Shortly thereafter, a request to cancel the detail

was submitted by OJJDP to the Office of Personnel with an effective date near the end of August

2001. Def.'s Statement ¶ 14. The Acting Deputy Director position was never filled, and

remained vacant until the position was eliminated in a subsequent office reorganization. Def.'s

Statement ¶ 15.

On November 28, 2001, plaintiff filed a formal complaint of discrimination on the basis

of race and sex for non-selection for the GS-14 position. Def.'s Statement ¶ 16. Plaintiff's claim

was accepted for investigation by the agency on February 6, 2002, and an EEOC administrative

judge eventually dismissed the claim on February 10, 2003 because the position had never been

filled. Def.'s Statement ¶¶ 17-20. That decision was affirmed on administrative appeal on

January 5, 2004. Def.'s Statement ¶ 21. Plaintiff filed a second formal EEO complaint on July

12, 2002 that included allegations that certain DOJ management officials had acted in retaliation

for her EEO activities; that complaint remains pending before the EEOC. Def.'s Statement ¶ 22.

Plaintiff does not dispute any of these facts other than to note two things. First, with

respect to the proposed detail being placed "on hold" in August 2001, she questions what that

means and whether it was pretextual, because during the same period the Acting Administrator

filled other temporary GS-14 positions. Pl.'s Response at 2, ¶ 12. Second, she questions when

Ms. Heisler's employing office asked to cancel the detail, asserting that the personnel action

cancelling the detail is date stamped November 29, 2001, "well after the office was informed of

the filing of the EEO complaint in this matter." Pl.'s Response at 2, ¶ 13.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

-4-

## II.    Legal Framework Under Title VII

Title VII states, in part, that it is unlawful for an employer "to fail or refuse to hire ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). A claim under Title VII, without direct evidence of intentional discrimination, is analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which established an "allocation of the burden of production and an order of presentation of proof." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

Under the McDonnell Douglas framework, the plaintiff must first establish by a preponderance of the evidence a prima facie case of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004). In a specific failure to hire or promote case, the plaintiff must show that: (1) she belongs to the protected class; (2) she applied for and was qualified for the job that the employer was seeking to fill; (3) she was rejected despite those qualification; and (4) after her rejection, the position remained open and the employer accepted applications from similarly qualified individuals. See McDonnell Douglas, 411 U.S. at 802; Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004); Teneyck, 365 F.3d at 1149-50. In establishing a prima facie case it is not necessary for the plaintiff to show the employer hired someone outside of the protected class. See Teneyck, 365 F.3d at 1150. Principally, in a failure to hire or promote case, the plaintiff must establish that her rejection did not result from either a lack of qualifications or the absence of the vacancy sought. See Int'l Bhd. of Teamsters v. United

-5-

States, 431 U.S. 324, 358 n.44 (1977); Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647,

650-51 (D.C. Cir. 2003). The absence of these two explanations for a refusal to hire is generally

sufficient to establish an inference of discrimination. See Teneyck, 365 F.3d at 1150-51

(citing Int'l Bhd. of Teamsters, 431 U.S. at 358 n. 44).

　　　For a retaliation claim, the *prima facie* case requirement is similar. As this Circuit

recently explained:

> For a retaliation claim, the plaintiff must show that "(1) she
> engaged in a statutorily protected activity; (2) she suffered an
> adverse employment action; and (3) there is a causal connection
> between the two." Taylor v. Small, 350 F.3d 1286, 1292 (D.C. Cir.
> 2003). "Where, as here, the plaintiff claims that the retaliation
> took the form of a failure to hire, the plaintiff must also show:
> 4) that [she] applied for an available job; and 5) that [she] was
> qualified for that position." Morgan v. Fed. Loan Mortg.
> Corp., 328 F.3d 647, 651 (D.C. Cir. 2003).

Carter, 387 F.3d at 878.

　　　Once a prima facie case is established, Title VII creates a rebuttable presumption that the

employer unlawfully discriminated. See United States Postal Serv. Bd. of Governors v. Aikens,

460 U.S. 711, 714 (1983). A prima facie showing triggers the burden of the employer to produce

admissible evidence that the failure to hire was motivated by a legitimate non-discriminatory

reason. Burdine, 450 U.S. at 254-56. This is a burden of production only. Id. The employer

"need not persuade the court that it was actually motivated by the proffered reasons. It is

sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated

against the plaintiff." Id.

　　　If the employer is successful, the burden shifts back to the plaintiff to show that the

employer's stated reason was a pretext for discrimination. Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 143 (2000). The plaintiff "may attempt to establish that [she] was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." Id. (quoting Burdine, 450 U.S. at 256). Hence, the plaintiff must establish that the articulated justification of the employer is merely a pretext for discrimination. Teneyck, 365 F.3d at 1151, and if the fact finder rejects the employer's justification as pretext, it "may infer the ultimate fact of intentional discrimination," St. Mary's Honor Ctr., 509 U.S. at 511. But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Reeves, 530 U.S. at 147. Thus, the fact finder may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. (quoting Burdine, 450 U.S. at 255 n.10). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49.

Although under McDonnell Douglas the "intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. at 143 (quoting Burdine, 450 U.S. at 253). Once the defendant has proffered a legitimate non-discriminatory reason for its action, then, the question is whether that proffered reason is a pretext for discrimination, and at this point the McDonnell Douglas shifting burdens framework disappears, the sole remaining issue is discrimination *vel non*, and "to survive summary judgment

the plaintiff must show that a reasonable jury could conclude from all of the evidence that the

adverse employment decision was made for a discriminatory reason." Lathram v. Snow, 336

F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.  Examination of that issue

therefore requires consideration of all the relevant circumstances, including the strength of the

prima facie case, any direct evidence of discrimination, and any circumstantial evidence that

defendant's proffered explanation is false (which may be enough with the prima facie case to

infer unlawful discrimination).  See, e.g., Reeves, 530 U.S. at 147-48; Carter, 387 F.3d at 878;

Lathram, 336 F.3d at 1089; Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C. Cir.

2002); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998).

### ANALYSIS

Plaintiff asserts a claim of race and sex discrimination with respect to her non-selection

for the OJJDP GS-14 Supervisory Social Science Program Specialist position.  In addition, she

claims that the cancellation of the position constitutes reprisal against her for her EEO activities.

Neither claim can survive defendant's motion, as explained below.

**I.    Discrimination Claim**

Plaintiff fails to establish a prima facie case of race or sex discrimination in her non-

selection for the position.  The fourth prong of the applicable test is that, after plaintiff's non-

selection, the position remained open and the employer accepted applications from similarly

qualified individuals.  See McDonnell Douglas, 411 U.S. at 802; Carter, 387 F.3d at 878;

Teneyck, 365 F.3d at 1149-50.  Hence, a plaintiff cannot establish a prima facie case if there was

no vacancy or the position at issue was never filled.  Indeed, one of the primary reasons that an

employer would fail to select or promote an applicant is the absence of a vacancy in the position

sought. Stewart v. Ashcroft, 352 F.3d 422, 428 (D.C. Cir. 2003) (citing Morgan, 328 F.3d at 651). Thus, the fourth prong of the prima facie test requires that the contested position remained open after the plaintiff was not selected. See Morgan, 328 F.3d at 651.

The facts establish, and plaintiff essentially concedes, that the detail of the putative selectee (Ms. Heisler) was cancelled and therefore the position was never filled. In the absence of a selection for the position and placement of the selectee in the position, there is no adverse employment action. Even if plaintiff is correct that the position was not formally cancelled until an agency reorganization in 2003, it remains the case that no one ever filled the Acting Deputy Director position and thus plaintiff cannot maintain that she suffered any adverse employment action. It is simply not a matter of genuine dispute that neither Ms. Heisler nor anyone else has ever occupied the position, drawn a salary from it, or fulfilled any of its duties. Plaintiff therefore fails to state a prima facie case of race or sex discrimination relating to her non-selection.

In her response to defendant's motion, plaintiff appears to be arguing that the decision to cancel the detail was pretextual because of uncertainty about the timing of the cancellation. The short answer to this contention is that there simply has not been an adverse employment action with respect to plaintiff where the disputed position was never filled, regardless of when formal cancellation may have occurred. Plaintiff concedes that the position was never filled and that the putative selectee's detail was cancelled. See Compl. at 3, 5, 6. Under the well-recognized legal framework of McDonnell Douglas, evidence of pretext is not even considered until a plaintiff has satisfied the initial burden of establishing a prima facie case of racial discrimination. Plaintiff has not done so here, and her discrimination claim thus fails.

-9-

## II.    Reprisal Claim

Plaintiff also contends that the cancellation of the position was in reprisal for her EEO activities.  Indeed, her assertion of pretext is more fairly construed as a claim of retaliation or reprisal for EEO activities.  However, ultimately that claim fares no better than her discrimination claim.

The reprisal claim fails at the outset for the reason that, as the Court has found, plaintiff cannot sustain her underlying discrimination claim because the position was never filled and thus she suffered no adverse employment action.  An element of the prima facie case for a retaliation claim is that the plaintiff show that she suffered an adverse employment action.  See Carter, 387 F.3d at 878; Taylor, 350 F.3d at 1292.  Hence, plaintiff cannot establish a prima facie case of reprisal.

The essence of plaintiff's reprisal argument turns on her assertions with respect to the date of processing certain paperwork related to cancellation of the detail, particularly a November 29, 2001, date stamp on a form effectuating the cancellation, which is after she filed her formal discrimination complaint on November 28, 2001.  Of course, it is undisputed that the detail was scheduled to begin in late August 2001, long before plaintiff's EEO activity.  See Compl. at 3-6; Pl.'s Response at 2, ¶ 15.  To establish a prima facie case of reprisal, plaintiff must show, inter alia, a causal link between the adverse action and the protected activity.  See Carter, 387 F.3d at 878.  Notwithstanding the November 29 date stamp on one form, the record clearly establishes that the cancellation materials were submitted for processing, and the decision not to have Ms. Heisler start the detail was made, well before the filing of plaintiff's EEO complaint on November 28, 2001.  Plaintiff presents no affirmative evidence, but merely questions the validity

-10-

of the uncontested evidence defendant has produced.  But the record establishes that the new

Acting Administrator, Mr. Donahue, suspended the detail in late August 2001, and that he did

not learn of plaintiff's EEO complaint until November 2001, well after the detail had been

cancelled.  It is also undisputed that the effective date of the cancellation was in fact August

2001.  See Pl's. Response at 2, ¶ 16.  The cancellation of the detail and elimination of the

position are the crucial material facts, and it is undisputed that the position was never filled and

that the cancellation decision was made in August 2001 and was subsequently reflected as

effective on that date.  Plaintiff's speculation about those undisputed facts, based only on the date

stamp on one form, is insufficient to defeat defendant's motion for summary judgment.  See

Celotex Corp., 477 U.S. at 324; Hayes v. Shalala, 902 F. Supp. 259, 263 (D.D.C. 1995).

      Moreover, defendant has asserted that plaintiff's reprisal claim must be dismissed for

failure to exhaust administrative remedies.  There is no doubt that plaintiff's initial EEO

complaint and the administrative phase of this case focused exclusively on her claim of

discriminatory non-selection based on her race and sex.  Indeed, the reprisal claim is the subject

of a separate formal EEO complaint filed on July 12, 2002 that remains pending before the

EEOC.  See Def.'s Statement ¶ 22.  However, the normal rule is that exhaustion will not be

rigidly required in retaliation cases because the charge of discrimination is seen as incorporating

subsequent instances of similar conduct.  See Loe v. Heckler, 768 F.2d 409, 420 (D.C. Cir.

1985).

      Still, defendant argues that in light of the Supreme Court's decision in Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101 (2002), exhaustion should be required for discrete acts

of retaliation occurring in the circumstances of this case.  The key here, according to defendant,

-11-

is that plaintiff alleges retaliatory acts that occurred prior to the filing of her first administrative

complaint. In that situation, retaliation claims may be barred for failure to exhaust administrative

remedies. See Marshall v. James, 276 F. Supp. 2d 41, 54-55 (D.D.C. 2003). To the extent that

plaintiff contends that Mr. Donahue acted in reprisal against her when he cancelled Ms. Heisler's

detail and left the position vacant -- events which concededly occurred in August 2001, long

before plaintiff's first administrative complaint was filed -- defendant's argument that plaintiff

failed to exhaust her administrative remedies on her reprisal claim would seem well-taken.

Plaintiff simply never raised such claims either in her November 28, 2001 EEO complaint or

during the EEOC proceedings on that complaint. She can, of course, continue to pursue her

reprisal claim in the separate EEO complaint that remains pending administratively.

## CONCLUSION

For all the reasons explained above, the Court will grant defendant's motion for summary

judgment as to both plaintiff's discrimination claim relating to her non-selection and her

subsequently-raised reprisal claim. A separate order will be issued.


/s/    John D. Bates
JOHN D. BATES
United States District Judge


Dated: January 18, 2005


-12-