UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DELARSE MONTGOMERY, JR. )<br>)<br>)<br>)<br>)<br>    Plaintiff,        )<br>v.                            )<br>)<br>)<br>ELAINE CHAO, Chairwoman )<br>Pension Benefit Guaranty Corp. et al., )<br>)<br>    Defendants.      )<br>_____) | Civil Action No. 05-2157 (RMU) |

### Declaration of DeLarse Montgomery

1. In approximately March 2002, I became the Contracting Officer's Technical Representative (COTR) for the Bert Smith contract. This contract had been in place since approximately 2000. The duties of the COTR as reflected in the Bert Smith contract were to monitor the performance of the contract, review the deliverables provided by the contract and provide technical guidance to the contractor (Bert Smith). To monitor the work, I had to be familiar with the accounting techniques and principles being employed by the contractor. As a result of my prior experience and education, I was able to satisfy this requirement.

2. I was not the Contract Administrator; that was Jeannie Dyson's role. As such, she worked on matters such as contract modifications, extensions, etc., but had nothing to do with the day to day work being done on the contract.

3. Bert Smith was an accounting firm hired to work on pension plans that had been terminated by the PBGC. Plans could be terminated for number of reasons such as insufficient funding or assets which signaled that the plan was failing or that the plan would fail in the future. The services to be provided were described in a Statement of Work (SOW) which was described in the contract. I later drafted the Statement of Work for this contract when it was rebid.

4. The first task expected from the contractor (Bert Smith) was an evaluation of the assets of the plan at the time it was terminated. At that point, a Journal entry would be made to reflect the estimated vaue of the assets. As the COTR, it was my responsibility to monitor the work being done by the Bert Smith firm to ensure that the assets were being properly evaluated and that the proper journal entries were made.

5.  However, the PBGC did not immediately take possession of the assets at that time as there were usually Court proceedings before the assets were turned over the PBGC. Therefore, it was necessary for the contractor (Bert Smith) to evaluate the assets of the terminated pension plan when the PBGC finally took possession of the assets and make appropriate journal entries. At that point the assets are transferred to another PBGC contractor that actually managed the assets.

6.  The PBGC has an automated accounting system/trust plan ledger that is used to manage the trustee assets. This program generates reports to confirm that entries have been properly made and when it is determined that there is some sort of discrepancy. As the COTR, I followed the progress of the contractor's work, to ensure that the services described in the Statement or Work were actually being performed. When discrepancies were noted, I would meet with the contractor to see that necessary corrections were made so that the discrepancies would be resolved.

I declare that the above is true and correct under penalty of perjury.

_____          _4/16/2007_
DeLarse Montgomery                  Date