UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DELARSE MONTGOMERY, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2157 (RMU) |
| ) | |
| **ELAINE CHAO, Chairwoman,** ) | |
| **Pension Benefit Guaranty Corp. et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This Reply Brief, together with Defendants' Motion for Summary Judgment ("Def. MSJ" or "Opening Brief"), demonstrate that Defendants are entitled to summary judgment on all of Plaintiff's discrimination and retaliation claims.

Regarding Plaintiff's non-selection claims for the accountant positions, Plaintiff offers his belief that he was qualified for the positions, even though he admits that he was not an accountant and did not work with any investment assets, other than cash. With respect to the collections analyst non-selection claim, it is undisputed that the non-status vacancy for which he applied was cancelled, and Plaintiff provided no evidence that the cancellation was due to a discriminatory reason. Regarding Plaintiff's accretion of duties non-promotion claim, he concedes that a desk audit performed pursuant to OPM's job classification standards revealed that his duties were classified as a GS-11, a grade lower than his GS-12 classification. Plaintiff offers no evidence, other than conjecture, to challenge this finding. Likewise, with respect to his Equal Pay Act claim, Plaintiff simply asserts, without support, that his job duties were equal, in

terms of skill, effort, and responsibility, to those performed by a GS-13 Supervisory Accountant, even though he was neither an accountant nor a supervisor.

In sum, Plaintiff's opposition is based on speculation and unsupported assertions that contradict the undisputed facts.  Such defective evidence is not sufficient to establish pretext and, therefore, summary judgment is appropriate in Defendants' favor.

## II.     STANDARD OF REVIEW

"To avoid summary judgment, the plaintiff [is] required to produce some ***objective evidence*** showing defendant's proffered reasons are mere pretext."  Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996), aff'd, 203 F.3d 51 (D.C. Cir. 1999) (emphasis added); Banks v. District of Columbia, 377 F. Supp. 2d 85, 89 (D.D.C. 2005) ("[W]holly conclusory statements for which no supporting evidence is offered need not be taken as true for summary judgment purposes.") (internal quotations omitted).  Thus, "the issue [currently before this Court] is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'"  Fischbach v. District of Columbia Dept. of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citing McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir.1992); Pignato v. American Trans Air, Inc., 14 F.3d 342, 349 (7th Cir. 1994) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible.  He must show that the explanation given is a phony reason.")).  "At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination [or retaliation], summary judgment ***must*** be entered against [plaintiff]."  Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997) (emphasis added).

III.     ARGUMENT

    A.     **Plaintiff Abandons His Discrimination Claims Regarding The GS-13 Accountant Position**

As shown in Defendants' Opening Brief, Defendants cancelled the GS-13 accountant position because the selecting official, Cynthia Adams, was not satisfied with the experience level of the candidates on the Certificate of Eligibles. See Def. MSJ at 17, Exhibit 15 (Adams Aff.) at 4:1-19; Exhibit 9 (Isaac Aff.) at 9:6-11. Plaintiff was not on the Certificate that Ms. Adams reviewed. See Adams Aff. at 4:1-19. Thus, there is no reasonable basis to infer that Ms. Adams cancelled the announcement to avoid selecting him. Plaintiff does not address the GS-13 accountant position in the argument section of his Opposition Brief. See Opp. Brief at 28 - 45. Therefore, he clearly has abandoned this claim.

    B.     **Plaintiff Fails To Show Defendants' Determination That Plaintiff Was Not Minimally Qualified For The Accountant Position Was Pretextual**

         1.     Plaintiff does not demonstrate that Defendants' proffered explanations are false.

Even assuming, arguendo, that Plaintiff has not abandoned his claims regarding the GS-13 Accountant position, Defendants offer well-supported, legitimate, non-discriminatory reasons demonstrating that Plaintiff was not minimally qualified for either the GS-13 or GS-12/13 Accountant positions. Specifically, Plaintiff did not submit college transcripts showing 24 semester hours of accounting or related courses, and he did not have the requisite specialized experience in accounting. See Def. MSJ at 15-19.

Plaintiff is required to refute ***both*** of these explanations to preserve his discrimination and retaliation claims for trial. See Barnette v. Chertoff, 453 F.3d 513 (D.C. Cir. 2006) (although record evidence did not support agency's first explanation, that it had a policy giving

-3-

preference to internal applicants seeking promotions over applicants seeking lateral transfers, the agency, nevertheless, was entitled to summary judgment because plaintiff could not demonstrate that the agency's second explanation - - that the selectee was more qualified - - was pretextual).[1] To establish pretext, Plaintiff argues that Defendants overlooked missing transcripts with respect to other, unrelated applications for vacancy announcements, and he offers his opinion that he had sufficient "experience" in "accounting" to qualify for the accountant positions. Plaintiff's arguments do not support a finding that Defendants' stated reasons are pretextual.

      The vacancy announcement for the GS-13 and GS-12/13 accountant positions expressly state that transcripts must be submitted if college work is to be considered in qualifying for the position. See PX 29 (Vacancy Announcement JI04-0105) at 5; PX 30 (Vacancy Announcement JI04-0143) at 4. Plaintiff admits he did not furnish the required transcripts. See Exhibit 1 (Montgomery Dep.) at 102:21 - 103:13; 105:6-19. He argues, however, that this is just a mere "technicality" because Defendants knew that he had fulfilled the education requirement, and that Defendants had overlooked this "technicality" for others. See id. at 102:21-103;105:6-19; see also Opp. Brief at 19, 43. Notably, he fails to provide evidence that Defendants overlooked the

---

[1] See also Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1309 (10th Cir. 2005) (en banc) ("The fact that one of the [employer]'s explanations turned out to be incorrect does not necessarily create a genuine issue of fact concerning pretext."; plaintiff could only refute one of two reasons proffered by employer); Tyler v. RE/MAX Mt. States, Inc., 232 F.3d 808, 814 (10th Cir.2000) ("[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."); Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir.1995) (debunking one explanation defeats summary judgment only if the company has offered no other reason that, standing alone, would have caused the company to take the action at issue); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 (11th Cir.1997) (plaintiff must discredit "each" proffered explanation; employer entitled to judgment because plaintiff could discredit only two of three explanations);see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (judgment for employer mandatory if "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision").

transcript requirement for other applicants during the selection process for the accountant positions.  Plaintiff provides only conjecture that Ms. Isaac assisted a white female, "Lynn Christopher," in resubmitting her application for an unrelated vacancy.  See Opp. Brief 32.  However, Ms. Isaac has no recollection of doing so, and the name did not "ring a bell" to her.  See Exhibit 8 (Isaac Dep.) at 115:20-22; 116:1-3.   In sum, Plaintiff  has failed to show pretext with respect to Defendants first proffered reason for finding Plaintiff not minimally qualified.

In response to Defendants' second reason for finding Plaintiff not minimally qualified - - a lack of specialized accounting experience at the next highest grade level –  Plaintiff argues that he was qualified because he performed "a number of accounting and accounting related duties."  See Opp. Brief at 32.  This argument is meritless because the accounting-related duties to which Plaintiff refers were limited to cash assets.  See Def. MSJ at 6.  His accounting-related work involved adding and subtracting values provided by the trust accountants.  See Exhibit 1 (Montgomery Dep.) at 67:1-11; 76:19-77:20.  Indeed, Plaintiff does not dispute Defendants' Statement of Fact 25 (Plaintiff's accounting treatments were limited to cash assets) or Statements of Fact 29 and 30 (the numbers Plaintiff used in various reports were either supplied by the trust accountants or determined by him using addition and subtraction).   See Defendants' Statement at 6.  See also Exhibit 3 (Adams Dep.) at 132:5-10; 134:16-22 (Plaintiff performed simple addition and subtraction at the GS-7 grade level).

Plaintiff's subjective belief that his limited accounting experience "qualified" him for the GS-13 or the GS-12/13 accounting position fails to establish a triable issue of fact.  A "[p]laintiff cannot establish pretext simply based on his own subjective assessment of his own performance, for 'plaintiff's perception of himself, and of his work performance, is not relevant.  It is the perception of the decision maker which is relevant.'"  Waterhouse v. Dist. of Columbia, 124

F.Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989, 997 (D.C. Cir. 2002), citing Smith v. Chamber of Commerce of the United States, 645 F.Supp. 604, 608 (D.D.C. 1986).[2]

Lastly, Plaintiff suggests that Ms. Adams inflated the complexity of the available accountant position to Ms. Isaac. See Opp. Brief at 20. This argument, too, lacks merit. Ms. Adams wanted applicants who had experience in "complex investment instruments as in derivatives and futures and options and that kind of thing." See Exhibit 15 (Adams Aff.) at 6:17-20. That statement simply mirrors the Vacancy Announcement itself. See PX 29 at 3; PX 30 at 3 ("Quality Ranking Factors ... 2. Knowledge of derivatives and **various complex investment instruments** to include the accounting treatment under GAAP.") and ("SELECTIVE FACTOR(S): (If you do not produce evidence of this knowledge, skill or ability, you will not receive further consideration for this position: 1. Experience in **investment accounting** with an emphasis on financial statement reporting") (emphasis added).

       2.       Cynthia Adams did not "misstate" Plaintiff's qualifications.

Plaintiff also argues that a "reasonable jury could conclude that Adams misstated Montgomery's qualifications to Isaac when she said that he was not performing accounting duties so that he would be disqualified from consideration." Opp. Brief at 33. For this argument, Plaintiff cites to a single sentence (highlighted below), taken out of context, from Ms. Isaac's EEO Affidavit:

> Q. Now, what's the difference between his position and that of an accountant's position?

---

[2] The fact that Plaintiff's supervisors were willing to "convert" him to the "510 accounting series at the GS-12 level," does not show that he **already** possessed the requisite experience, but rather, that they were willing to give him an opportunity to perform trust accounting duties. Plaintiff, however, declined this opportunity. See Exhibit 1 (Montgomery Dep.) at 149:9-18; Exhibit 3 (Adams Dep.) at 102:1-10;155:4-12.

> A.  Well, an accountant, and like I said, I don't have the stuff in front of me, they're very specific as to what they wanted, if I had the vacancy announcement I could let you know a little bit more detail, I don't have them in front of me, but it's two different types of things.  And it's based on the series.  **He is not doing any kind of accounting work according to also his manager.**  She is not giving him accounting work to do.

Exhibit 32 (Isaac Aff.) at 11 (emphasis added); Opp. Brief at 20, 32.  When viewed in context, the above excerpt does not indicate any statements made by Ms. Adams, let alone a "misstatement."  Ms. Isaac did not, as Plaintiff seems to suggest, attribute the highlighted statement to Ms. Adams.  Rather, they are Ms. Isaac's **own** words based on her admittedly limited recollection.  Further Ms. Isaac's recollection of what Ms. Adams told her is hearsay and, thus, inadmissible.  See Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000) (holding hearsay evidence insufficient in sex discrimination case to avoid summary judgment: "Verdicts cannot rest on inadmissible evidence.  Gleklen's evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. . . .  It therefore counts for nothing.").

      Even assuming the statement was made, it is not the type of egregious mendacity envisioned by the Court in Aka v. Wash. Hosp. Ctr., 156 F.3d 1284 (D.C. Cir. 1998) (en banc).  For example, "if the employer says that it did not hire the plaintiff because he did not speak Portuguese, the plaintiff can show that he did speak Portuguese, and that the employer knew it."  See id. at 1295.  This Court and the D.C. Circuit have recently rejected similar "misstatements" proffered by plaintiffs, in their failed attempts to stave off summary judgment.  See Holcomb v. Powell, 433 F.3d 889, 899 (D.C. Cir. 2006) (holding that none of the misstatements cited by plaintiff "approaches the level of 'adequate evidence' we identified in Aka, where we posited a rather explicit misstatement as the type that might permit an inference of discrimination");

Simpson v. Leavitt, 437 F. Supp.2d 95, 102 (D.D.C. 2006) ("To the extent that Klafehn's statement may not fully acknowledge the scope of Ms. Simpson's professional experience, it does not approach the level of 'rather explicit misstatement' referenced in Aka."). In sum, Plaintiff fails to show that Defendants' reason for concluding that he is not minimally qualified, i.e., because he lacks the requisite accounting experience, is pretextual.

     Finally, even assuming Plaintiff had been found minimally qualified for the GS-12/13 accountant position, he cannot establish that he was significantly better qualified than the selectee. While the Supreme Court stated that the "visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications," see Ash v. Tyson Food, Inc., 126 S.Ct. 1195 (2006), 126 S.Ct. at 1197, it did not disturb this Court's standard in Aka v. Washington Hospital Center, supra, 156 F.3d at 1294 ("concluding the factfinder may infer pretext if 'a reasonable employer would have found the plaintiff to be significantly better qualified for the job'"). See Ash 126 S.Ct. at 1198. Since Plaintiff cannot demonstrate that he is "significantly more qualified for the job," then there is no inference of pretext.

     Here, the selectee, Ms. LaFaye Graham, had a four-year degree in finance, a Masters in accounting, 15 years of experience in the accounting field, and specific accounting experience in investment accounting. See Exhibit 3 (Adams Dep.) at 120:1-8; 160:11-20; 161:16-17. In contrast, Plaintiff had only a two-year degree, never worked in the accounting series, and performed low-level (GS-7) accounting duties involving cash assets. See, supra, at 5. Plaintiff impliedly concedes this disparity by making no attempt to compare himself to Ms. Graham in his

Opposition Brief.³  This gap in qualifications deflates *all* of Plaintiff's discrimination claims with respect to the GS-12/13 Accountant position, for which Ms. Graham was hired.

In addition, with respect to Plaintiff's race discrimination claim, all of the primary actors involved in the GS-12/13 accountant selection process are African-American.  Plaintiff, the selecting official (Cynthia Adams), her supervisor (Wayne McKinnon), and the selectee (Lafaye Graham) all are African-Americans.  See PX 2 at 54:8; PX 8 at 40:2-3; 78:18-21; PX 12 at 161:16-17.  This fact cuts against any inference of discrimination.  See Murray v. Gilmore, 406 F.3d 708, 715 (D.C. Cir. 2005) (even though plaintiff showed that defendant falsely claimed that it eliminated plaintiff's position, plaintiff's race claim failed because she was replaced with another African-American, and "replacement within the same protected class cuts strongly against any inference of discrimination"); Brown v. Brody, 199 F.3d 446, 451 (D.C. Cir.1999) (noting that a gender discrimination claim by a female "would be baseless because two of the three employees selected for that transfer were women");  Pyne v. District of Columbia, 468 F.Supp.2d 14, 20 (D.D.C. 2006) ("Plaintiff's case is severely undermined by the fact that the defendant filled two of the three positions for which plaintiff applied with fellow African-Americans.").

      **C.**      **Plaintiff Fails To Show That Defendants Cancelled The Non-Status Vacancy Announcement (Collections Analyst Position) For Discriminatory reasons**

To support his discrimination/retaliation claims concerning the Collections Analyst position, Plaintiff proffers the following convoluted theory:  (1) Plaintiff applied for both the status (JI04-0138) and non-status (JI04-0139) vacancy announcements; (2) Plaintiff obtained a

---

³ Plaintiff makes only a passing reference to Graham in his Opposition Brief, at 22 ("Here, Lafaye Graham (African-American female) was ultimately selected to fill the GS-12/13 position.").

receipt for only his non-status application when he hand-delivered them both; (3) Defendants then intentionally lost his status application; and (4) Defendants discriminated or retaliated against Plaintiff by canceling the non-status vacancy and/or failing to follow its collective bargaining agreement.  See Opp. Brief at 22-23, 33-34.

Ordinarily, the failure to apply for a position "effectively dooms" all claims related to that position.  Lathram v. Snow, 336 F.3d 1085, 1089 (D.C. Cir. 2003) (granting summary judgment to agency on plaintiff's promotion and discriminatory pay claims because plaintiff did not apply for the GS-14 position at issue and had not attempted to show that applying would have been "futile").  In this case, the objective evidence suggests that Plaintiff never submitted an application for the status vacancy announcement.  Specifically, his name does not appear on Defendants' log sheet for this announcement.  See Exhibit 26a (Log Sheet for JI04-0138).  Plaintiff, on the other hand, offers nothing more than his unsubstantiated assertion that he submitted an application.  To accept Plaintiff's theory, that HRD personnel lost Plaintiff's status application, intentionally and with a discriminatory motive, the factfinder would have to conclude that they did so with the selecting official's knowledge, to weaken the Plaintiff's chances of getting the position.  If the goal was to deny Plaintiff the position, then it begs the question as to why HRD did not "lose" both of his applications.  In any event, his theory has no basis in fact, especially since Plaintiff admits that the HRD receptionist who accepted his application did not discriminate or retaliate against him.  See Exhibit 1 (Montgomery Dep.) at 156:11 - 157:3.

Moreover, Plaintiff has adduced no competent evidence that Defendants cancelled the non-status announcement for which he applied (JI04-0139) for discriminatory reasons.  See Bowie v. Ashcroft, 283 F.Supp.2d 25, 31 n.4 (D.D.C. 2003) ("cancellation of a vacancy announcement would not constitute an adverse employment action if the defendant were able to

provide legitimate, non-discriminatory reasons for the vacancy cancellation and the plaintiff failed to meet his burden of proving that those reasons were merely a pretext for discrimination"); Carter v. Pena, 14 F.Supp.2d 1, 6 (D.C. Cir. 1997) ("the defendant in this case has offered a legitimate, nondiscriminatory reason for its cancellations of the vacancies at issue in this case, namely budgetary considerations [and plaintiff] has not met his burden of proving that the reasons produced by the DOE for the cancellations were merely a pretext for discrimination").

As noted in their Opening Brief, Defendants cancelled the non-status vacancy because a qualified applicant already had been selected from the status vacancy announcement (JI04-0138). See Def. MSJ at 26. To rebut this explanation, Plaintiff makes only one argument - - that Article 13 of the Collective Bargaining Agreement requires Defendants to forward to the selecting official all of the status and non-status applications of PBGC employees first. See Opp. Brief at 33. Plaintiff seems to suggest that his name should have been included on the Certificate, issued from an announcement for which Defendants did not have an application from him. See id. Nothing in Article 13, however, requires that Defendants combine the status and non-status candidates from **separate** vacancy announcements. See PX. 36. Moreover, Plaintiff has adduced no evidence that Defendants intentionally altered their selection procedures so as to avoid selecting him, or that he fared differently than other non-status applicants for the Collections Analyst position. See Opp. Brief at 33. Finally, Plaintiff's comparison of his qualifications versus Rebecca Pavone's, the selectee from the status announcement, is immaterial, because the selecting official did not have Plaintiff's application to evaluate their respective qualifications. See Exhibit 9 (Isaac Aff.) at 17:8-18.

### D.  There Is No Evidence Of Discriminatory Animus Regarding The Denial Of Plaintiff's Accretion Of Duties Promotion

Plaintiff wants this Court to infer discriminatory animus in the decision to deny Plaintiff an accretion of duties promotion based on his assertion that the desk auditor based her findings on an outdated PD, and on alleged misstatements provided by Ms. Adams.  See Opp. Brief at 29-31. As Defendants explain below, the desk audit report was based on several sources, including significant input from Plaintiff, and there is no evidence that any misstatements were made to the auditor.  Plaintiff also alleges that since non-black employees within FOD received accretion of duties promotions, and he did not, that this creates an inference of discrimination.  See id. at 30-31.  Plaintiff neglects to mention that there is no evidence that the persons who received accretion of duties promotions, did so because of an increase in COTR duties.  Therefore, Plaintiff cannot rebut Defendants' non-discriminatory reasons for denying him a promotion.

The desk audit report indicates that the conclusions were based on a "face-to-face" meeting with Plaintiff, as well as Plaintiff's written responses to a five-page "Employee Interview Questionaire."  See Exhibit 7 (Audit Report and Employees Interview Questionnaire).[4]  Contrary to Plaintiff's assertion that the report is based on an "outdated PD," as well as "misstatements" made by Ms. Adams," it is clear that the auditor considered Plaintiff's description of his duties, as they are discussed in Sections V and VI.  See Exhibit 7 (Desk Audit Report) at 1 and 2. Significantly, there is no indication that Ms. Adams disagreed with any of the information

---

[4] Question 3 of the Audit Report Questionnaire, for example, asked Plaintiff to "summarize the overall purpose and function of your job with the most difficult tasks first."  Plaintiff listed three job duties: (1) "Analyze and reconcile financial reports," (2) "Reconciliation and coordination of missing participant program," and (3) "Contracting Officer Technical Representative (COTR)." Plaintiff expanded on the manner in which he performed these duties in response to questions 4-18.  Exhibit 7 (Audit Report Questionnaire) at 1-5 (Questions 4-18).

provided by Plaintiff. To the contrary, the desk audit report indicates that Ms. Adams "signed" the written audit information that Plaintiff gave to the auditor. Id. at 1 (Section IV).

Additionally, Plaintiff did not raise with the auditor the alleged "inaccuracy" of his PD when given the opportunity to do so. Question 2 of the audit report questionnaire asks Plaintiff the following: "State the Title, series, and grade of your current position. Is your position description of record accurate? If not, list the new duties." Notably, Plaintiff identified his title, grade, and series; however, he did *not* state that his PD was inaccurate or list any new duties. See id. at 1 (Question 2). His attempt to claim that the desk audit report is based on an "outdated" PD is without basis in fact.

Likewise, there is no evidence to support Plaintiff's assertion that Ms. Adams "misstated" Plaintiff's COTR duties, or that the auditor was misled by information Ms. Adams provided. See Opp. Brief at 30. To the contrary, the report reflects that the auditor considered Plaintiff's description of his COTR duties, before concluding that the duties were not grade controlling. Compare Exhibit 7 (Audit Report) at 2-3 (Section VI) with Exhibit 7 (Audit Report questionnaire) at Question 17.[5] Significantly, Plaintiff did *not* provide that he reviewed the

---

[5] When asked if his job duties changed within the last year, Plaintiff responded as follows:

> Yes. COTR duties and responsibilities to Professional Service Contract were assigned a year and nine months ago. Monitor contract performance. Maintain records, logs, and reports that document action taken by the contractor and PBGC during the duration of the contract. Complete various budgetary and financial reporting requirements and analyses. Verify and certify for payment all billings related to services performed. Complete modifications to contracts and work in conjunction with Procurement Staff in changes to the contract.

See Exhibit 7 at Question 17.

accounting work generated by the contract accountants,[6] see id., something the auditor stated would be necessary "for the work to rise to the level of actually affecting the grade of his position."  See Exhibit 7 (Audit Report) at 3 (Section VI).  Thus, the auditor appropriately concluded that Plaintiff provided only "administrative" oversight of the contractors's work.  See id.  In sum, Plaintiff's assertions regarding the questionable basis of the desk audit report are unfounded and do not create any disputed issues of material fact.

Plaintiff's argument that non-black employees received accretion of duties promotions is unavailing.  See Opp. Brief at 29.  The fact that individuals of different races received promotions does not advance Plaintiff's claim.  Plaintiff is required to "establish that his employment situation was similar in all relevant regards to those with whom he seeks comparison."  Nurriddin v. NASA, 382 F.Supp.2d 79, 97 (D.D.C. 2005) (granting summary judgment to employer on plaintiff's grade promotion claim because plaintiff failed to identify similarly-situated employees who were promoted to GS-13 or GS-14; the employees referenced by plaintiff "had different background experience, had different responsibilities, and in many cases had a different supervisor"); Holbrook v. Reno, 196 F.3d 255, 261 (D.C.Cir.1999) ("A plaintiff . . . must demonstrate that all of the relevant aspects of [his] employment situation were nearly identical to those" of the comparators.)

Since Plaintiff sought a promotion based solely on his additional COTR duties, he is required to show that the promotions allegedly received by the comparators resulted from the assignment of additional COTR duties.  While Plaintiff provides the names of five non-black

---

[6] It is undisputed that Lisa Cho, GS-13 accountant and "team leader," reviewed the substantive work performed by the contract accountants under the Bert Smith contract.  See Defendants' Statement of Fact 41 (uncontested by Plaintiff); Exhibit 3 (Adams Dep.) at 152:17-153:1.

employees who he believes received promotions based on accretion of duties, see Opp. Brief at 29, he cannot establish that any of them received a promotion due to increased COTR duties. See Exhibit 1 (Montgomery Dep.) at 33:13-45:25; Opp. Brief at 29. In fact, Plaintiff admits that the promotions for three of the employees (Melinda Fitzpatrick, Shirley Jones, and Tonya Jones) were not related to increased COTR duties. See Exhibit 1 (Montgomery Dep.) at 33:13-45:25. As for the remaining two employees (Sam Yeng and Franklin Tate), Plaintiff has no idea if their promotions were based on increased COTR duties. See id. Moreover, none of the employees Plaintiff names has the same job position, or works in his branch. See id. Once again, Plaintiff fails to produce evidence that creates a disputed issue of material fact.[7]

### E. Plaintiff Failed To Administratively Exhaust His Retaliation Claim Regarding The Denial of His Accretion of Duties Promotion

Plaintiff admits that he did not check the reprisal box on the EEO counselor's report in Complaint No. 3-10. See Opp. Brief at 36; Plaintiff's Response to Statement of Fact 103. Further, he does not contest that (1) Defendants did *not* accept for investigation a reprisal claim in connection with his accretion request and, (2) he never disagreed with Defendants' letter limiting its investigation only to discrimination claims. See Def. MSJ at 36-37; See also Plaintiff's Response to Statements of Fact 103 and 106. Moreover, Plaintiff took no steps during the June 14, 2004 interview, to inform the EEO investigator that he wished to add retaliation as a basis for his complaint. As a result, retaliation was not addressed. See e.g., PX 1 at 2:22 - 3:2; 5:19 - 6:3;

---

[7] Additionally, Plaintiff had the option of appealing the desk audit/position classification to the Office of Personnel Management (OPM) and/or through internal appeal. As a result of his failure to do so, the Court should find that he was not qualified for a position upgrade. See 5 U.S. C. § 5112(a)(4); Lutes v. Goldin, 62 F.Supp.2d 118 (D.D.C. 1999) (Court concludes that plaintiff was not qualified for position upgrade because plaintiff did not appeal any of five independent determinations, including two desk audits).

7:12 - 8:17; 10:2-6.  Notably, Plaintiff was represented by counsel during this interview, see id. at 4:6-12, and given an opportunity at its conclusion to "add [to his] statement."  Id. at 12:1-5.  Neither Plaintiff nor counsel mentioned retaliation.  Id. at 13:12-22.  Thus, Plaintiff failed to administratively exhaust his reprisal claim with respect to his accretion of duties non-promotion claim.  See Showalter v. Weinstein, 2007 WL 1241630 (10th Cir. April 30, 2007) (unpublished) (trial court properly dismissed federal employee plaintiff's discrimination claims for failure to exhaust because plaintiff "checked the box next to 'Reprisal' but did not check any of the other seven boxes (race, color, religion, sex, national origin, age, or disability)"; plaintiff also did not respond to agency's letter limiting its investigation to hostile work environment and retaliation, thereby "effectively abandon[ing] any other issues she might want to raise").

In addition, Plaintiff's reference in the EEO Complaint Form to "Prohibited Personnel Practices" does not put the agency on notice of his retaliation claim.  See Opp. Brief at 36.  As an initial matter, participating in the EEO process is not a prohibited personnel practice. See 5 U.S.C. § 2302(b). Moreover, the PBGC is a government corporation, not an agency, and is not, therefore, subject to "prohibited personnel practices" except pursuant to 5 U.S.C. § 2302(b)(8).[8] Plaintiff misleadingly describes subsection (b)(8) as a general "prohibit[ion of] retaliatory acts by employers."  See Opp. Brief at 36.  In fact, subsection (b)(8) is very narrowly tailored in that it is restricted to whistleblower complaints submitted to "the Special Counsel, or to the Inspector General of an agency."  See 5 U.S.C. § 2302(b)(8).  Thus, Plaintiff cannot argue now that by

---

[8] 5 U.S.C. § 2302(a)(2)(C)(I); Snead v. PBGC, 74 M.S.P.R. 501, 503 (1997)("The Pension Benefit Guaranty Corporation was created by Congress, which specified by statute its powers, duties, and organization, and is explicitly classified as a "wholly owned" Government corporation. As a corporation owned by the Government of the United States, then, it is a "Government corporation" for purposes of title 5 and is excluded from coverage under 5 U.S.C. § 2302 with the exception of subsection (b)(8).") (Internal cites omitted).

referencing "prohibited personnel practices," he actually intended to allege retaliation for his prior EEO activities, especially since he could have easily checked the "reprisal" box on the complaint form.[9]

      F.      **Plaintiff Did Not Present Direct Evidence Of Retaliation.**

Plaintiff claims to have established "direct" evidence of retaliatory motive, because (1) Richard Lattimer said that "everyone at the Agency relevant to the case knew" about Plaintiff's earlier case, and (2) Jackie Isaac testified that settling cases by granting promotions "shouldn't be done. It's not what OPM requires you to do." See Opp. Brief at 38-39. This argument merits little discussion.

Direct evidence of a retaliatory motive is a statement by the decision-maker that he or she undertook the challenged action because the charging party engaged in protected activity. See e.g., Weathersby v. Secretary of Interior, 242 F.Supp.2d 20, 22 (D.D.C. 2003) (selecting official's comment that she would not want to interview an applicant because he had filed several discrimination complaints was, if believed by the jury, "a rare thing: direct evidence of a

---

[9] In Plaintiff's Opposition Brief, he cites his August 22, 2005, EEO Affidavit, as proof that he was relying upon not only the 1998 Settlement Agreement as a basis for his retaliation claim, but also "all of his complaints." See Opp. Brief at 38. However, in that same affidavit, he mentions only the 1998 case and a 1994 case. Specifically, he testified as follows:

> Q: When you filed your formal complaint, and I'm assuming you allege that you were the subjected to reprisal, what prior activity were you referring to, at that time?
> A: Which formal complaint are you referring to?
> Q: Let's go to your first one. The one dealing with vacancy announcement JI04-0105 and JI04-0143, and I think that's formal complaint 05-04?
> A. That would be previous complaints of 1994 and I think, 1998.

See PX 3 at 5:10-19.

discriminatory and retaliatory motive"). Mr. Lattimer's comment shows mere knowledge of Plaintiff's prior complaint, nothing more. Ms. Isaac's comment, while perhaps expressing discomfort with the 1998 settlement because it did not comport with OPM's promotion requirements, is not direct evidence that she harbored retaliatory animus specifically against Plaintiff. Indeed, she expressly denied doing so. See Exhibit 8 (Isaac Dep.) at 147:2-11;164:12-22;165:1 (the settlement did not cause Ms. Isaac to react "negatively" to the Plaintiff).

### G. Plaintiff Failed To Adduce Evidence That Defendants' Explanations Are Pretextual.

Even assuming Plaintiff establishes a prima facie case of retaliation, he fails to adduce evidence that Defendants' legitimate, non-discriminatory and non-retaliatory reasons for denying him a promotion are pretextual. See Woodruff v. Peters, 482 F.3d 521, 531 (D.C. Cir. 2007) (summary judgment granted against plaintiff because plaintiff provided "no basis for rejecting the presumptive validity" of his supervisor's decision). Here, the alleged retaliatory acts are the same as the alleged discriminatory acts. As explained in this Reply and the Opening Brief, Plaintiff has failed to offer any persuasive, competent evidence that his non-promotion was the result of his race, age, gender, or prior protected activity. As set forth in Defendants' Opening Brief, Defendants had legitimate, non-discriminatory reasons for its decision not to promote Plaintiff, for finding him not minimally qualified for the accounting positions, and for cancelling the Collections Analyst position. See Def. MSJ at 25-34. Plaintiff has failed to show that these reasons are pretext for discrimination or retaliation and, therefore, summary judgment is appropriate in Defendants' favor.

### F. Plaintiff's Equal Pay Act Claim Fails Because He Did Not Demonstrate His Job Duties Were Equal To Those Performed By Christine Thomas.

Responding to Defendants' jurisdictional argument, Plaintiff lowers his Equal Pay Act

(EPA) backpay claim to $9,999.00. See Opp. Brief at 44. Plaintiff claims that Defendants violated the EPA by assigning him COTR duties previously performed by GS-13 Supervisory Accountant Christine Thomas. The Court should dismiss this claim because Plaintiff did not demonstrate that his job and Ms. Thomas's job were equal in terms of skill, effort, and responsibility.

In Byrnes v. Herion, Inc., 764 F.Supp. 1026 (W.D. Va. 1991), an accountant made an EPA claim similar to Plaintiff's. There, the female plaintiff assumed the Chief Accountant position for an annual salary of $20,000.00, which was later raised to $23,000.00. Id. at 1028-1029. Plaintiff brought an EPA claim because her male predecessors had earned $28,000 per year in that position. Id. at 1027. The court dismissed the claim because the plaintiff had assumed only 20-30% of her predecessors' duties, including preparing accounting statements, but not the "core" of such duties, including cost accounting, bank reconciliations, and handling "special projects." Id. at 1030.

Similarly, Plaintiff here failed to make the requisite showing that his and Ms. Thomas's jobs were comparable, much less equal, in terms of skill, effort, and responsibility. The undisputed evidence shows that their jobs differed considerably. Ms. Thomas was a GS-13 supervisory accountant, performing trust accounting and supervisory duties, in addition to her COTR duties. See Opening Brief at 10; Complaint at ¶ 8. Plaintiff, by contrast, was a Financial Specialist, not an accountant. See Exhibit 1 (Montgomery Dep.) at 87:19-22. He did not perform the complicated duties of a trust accountant, relating to investment assets. See Exhibit 3 (Adams Dep.) at 143:11-17; 144:9-15; 146:3-11; 147:2-7; 149:16-22. Although he performed some accounting-related work, it was limited to adding and subtracting values provided by the trust accountants, and was done at the GS-7 grade level. See Plaintiff's response to Statement of Fact

25 and 29; Exhibit 3 (Adams Dep.) at 132:5-10; 134:16-22; Exhibit 1(Montgomery Dep.) at 67:1-11; 76:19-77:20; see also Statement of Fact 30 (uncontested by Plaintiff).  Plaintiff did inherit Ms. Thomas's COTR duties, but not her core trust accounting and supervisory duties.  Moreover, as discussed extensively above and in the Opening Brief, Plaintiff's COTR duties were not grade-controlling.  Because their jobs clearly were not equal, and because Plaintiff did not inherit Thomas's core duties, Plaintiff's EPA claim must fail.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor on all of Plaintiff's claims.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
KAREN L. MELNIK, DC Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0338