# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DELARSE MONTGOMERY, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2157 (RMU)** |
| ) | |
| **ELAINE CHAO, Chairwoman** ) | |
| **Pension Benefit Guaranty Corp. et al,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF PURPORTEDLY DISPUTED MATERIAL FACTS

Defendants respectfully submit this reply to "Plaintiff's Statement of Genuine Issues" ("Plaintiff's Statement").

## I.  INTRODUCTION

Plaintiff's Statement fails to establish that there are any genuine issues of material fact for trial.  To the contrary, Plaintiff fails to contest a large number of Defendants' facts.  He also fails to call into genuine question the facts he does purport to challenge.  As to these facts, Plaintiff purports to dispute them largely by challenging facts other than those Defendants have asserted; by relying on unsupported allegations and speculation; and by ignoring his own binding testimony and representations.  Finally, Plaintiff purports to dispute a number of facts not identified in Defendants' Statement of Material Facts Not in Genuine Dispute ("Defendants' Statement"); these purported facts are immaterial to Defendants' motion for summary judgment.

## II.  ARGUMENT

**A.     <u>Legal Standard</u>**

Local Rule 7(h) requires that an opposition to a motion for summary judgment be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  The opposing statement of genuine issues must respond **directly** to the factual statements asserted in the motion for summary judgment.  As stated in the rule:

> In determining a motion for summary judgment, the court may assume that **facts identified by the moving party** in its statement of material facts are admitted, unless **such a fact** is disputed in the statement of genuine issues filed in opposition to the motion.

LCvR 7(h) (emphases added).  <u>See</u> <u>also</u> LCvR 56.1.

**B.     <u>Sub-Sections I and II of Plaintiff's Statement Are Unresponsive</u>**

Sections I and II (1) through (10) of Plaintiff's Statement contain factual contentions and legal arguments that are unresponsive to Defendant's Statement.  These two sections are a nine-page reformulation of Plaintiff's forty-five page Opposition to Defendants' Motion for Summary Judgment.  Since these subsections do not comply with LCvR 7(h), Defendants will not respond to them here.  Defendants will respond to Plaintiff's legal arguments in its Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

**C.**     **Plaintiff Has Failed to Contest Many of the Facts Asserted in Defendants' Statement**

Plaintiff's Statement fails to address the following of Defendants' factual statements:

¶¶ 1, 2, 4, 6, 23, 26-28, 30-31, 35-36, 38-39, 41-47, 49, 50-54, 56, 58-59, 62-62, 65, 71-74, 77, 83-87, 92, 94-97, 100-102, 107-110, 104-105.  Having failed to contest these facts, he must be deemed to have conceded them.  See LCvR 7(h); see also Twist v. Meese, 854 F.2d 1421 (D.C. Cir. 1988); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996); Heasley v. D.C. General Hosp., 180 F. Supp. 158, 163 (D.D.C. 2002); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

**D.**     **Plaintiff's Purported Evidence is Insufficient to Create a Genuine Dispute as to Any of the Remaining Material Facts**

1.     Admissions With Additional Unresponsive Facts And/Or Arguments

Plaintiff does not expressly dispute Defendants' factual statements ¶¶ 25 and 29, claiming in response to both, that the statements are "Not Material."  These facts, too, must be deemed to be admitted as Plaintiff does not contest them.  See LcvR 7(h).

Defendants' Statement of Fact 25:  In response, Plaintiff neither admits nor denies this statement of fact, but asserts that the statement is not material because "there is more than one type of accounting."  Plaintiff's assertion is non-responsive and irrelevant because the accounting positions for which he applied expressly required applicants to have a background in one specific type of accounting - - that of  "investment" or "trust" accounting.[1]  Indeed, both vacancy announcements contained the following selective factor:

SELECTIVE FACTOR(S): (If you do *not* produce evidence of this knowledge, skill or

---

[1]Adams testified that the Investment Accounting Branch (IAB) was also referred to as the "Trust Accounting Branch."  Exhibit 3 (Adams Dep.) at 13:20-22.

ability, you will *not* receive further consideration for this position.)
1.  Experience in *investment* accounting with an emphasis on financial statement
reporting.

See Exhibit 12 (Vacancy Announcement JI04-0105) at 3; Exhibit 17 (Vacancy Announcement JI

0143) at 3 (emphasis added).  Cynthia Adams, the selecting official for both positions, was

looking for:

> Someone that had experience with *accounting for investment instruments*, normal
> investment instruments meaning like common stocks, bonds, and that kind of thing, but I
> also needed someone that had more experience in the way of dealing with more complex
> investment instruments as in derivatives and futures and options . . . . And I also required
> that the person . . . had experience in the area of financial statement preparation.

Exhibit 15 (Adams Aff.) at 6:17-25 (emphasis added).

It is undisputed that Plaintiff did not perform "trust" or "investment" accounting duties,

and had no experience using accounting treatments on investment instruments (e.g., stocks,

bonds, derivatives, futures).  Exhibit 3 (Adams dep.) at 143:11-17; 144:9-15; 146:3-11; 147:-7;

148:9-14; 149:16-22; Exhibit 15 (Adams Aff.) at 7:19-25 ("Monty had not performed any of the

accounting duties that the other members of the [Investment Accounting] Branch had

performed").  Plaintiff's accounting-related duties were limited to simple addition and

subtraction, see Exhibit 3 (Adams Dep.) at 132:5-10; 134:16-22 and Exhibit 1 (Montgomery

Dep.) at 67:1-11;76:19-77:20, and could be performed at the GS-7 grade level.  Exhibit 3

(Adams Dep.) at 132:5-10; 134:16-22.

Notably, Plaintiff admitted that he did not have experience analyzing "financial activity of

PBGC's commingled fund as reported by the Corporation's custodian bank via working trial

balances, transactions reports, composite trial balances, etc, " which is the first duty identified in

both accounting vacancy announcements for which he applied.  When asked about that duty at

deposition, Plaintiff explained that those were "accountant duties," which he did not perform, since he "was a Financial Specialist." Exhibit 1 (Monty Dep.) at 87:19-22; 88:1-25;89:1.[2] In sum, it is undisputed that Plaintiff had no experience with investment accounting, as was required by the vacancy announcements at issue.

Defendants' Statement of Fact 29: In response, Plaintiff neither admits nor denies this fact, but asserts that the statement is not material because the trust accountants in IAB also, at times, used "numbers which already existed," and this fact "does not mean Montgomery was not qualified to be an accountant." Again, Plaintiff's assertions are non-responsive and irrelevant because the accounting vacancy announcements for which he applied expressly sought experience in a specific type of accounting - - investment or trust accounting. As noted above, it is undisputed that Plaintiff did not perform any trust accounting duties and, thus, had no experience using accounting treatments on investment instruments (*e.g.*, stocks, bonds, derivatives, futures). See Defendants' Reply to Statement of Fact 25, infra at 3-5.

In sum, since Plaintiff does not dispute Defendants' factual statements contained in Paragraphs 25 and 29, he must be deemed to have conceded them. See LCvR 7(h); see also Twist v. Meese, 854 F.2d 1421 (D.C. Cir. 1988); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.2d 145, 151 (D.C. Cir. 1996); Heasley v. D.C. General Hosp., 180 F.

---

[2]Plaintiff also admitted that he had no experience "analyzing balance sheets, income statements, and transaction registers submitted by terminated pension plans in order to reconcile and record financial data on large and complex plans," see Exhibit 1 (Monty Dep.) at 92:23-25;90:1-3, and had no knowledge working with "derivatives" and "complex investment instruments." Id. at 98:18-22. See also Exhibit 15 (Adams Aff.) at 8:20-25;9:1-3 ("Monty does not do any of the accounting for the actual plans, but what he was responsible for is on a monthly basis, he runs summary trial balances for those plans and he pretty much does some downloads from Dbase and gives us the report . . . . So he's not doing the hands-on accounting like the other people on the staff are doing for the individual terminated plans").

Supp. 158, 163 (D.D.C. 2002); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

   2. Plaintiff's Purported "Disputed" Evidence Which Fails To Create a
   Genuine Issue Of Material Fact

   Plaintiff responds to Defendants' factual statements contained in ¶¶ 3, 5, 24, 32-34, 37,

40, 42, 48, 50, 55, 57, 60, 63-64, 66-70, 75-76, 78-82, 88, 90-91, 93, 98-99, 103, 106 with

purportedly disputed evidence, attempting to create a genuine issue of material fact. Plaintiff

fails because the evidence relied upon is irrelevant, non-responsive, or inadmissible.

   Defendants' Statement of Fact 3: Although Plaintiff purports to dispute that he was

promoted in 1998 to a GS-12 Financial Specialist (501 series), he offers no facts or evidence to

create a dispute. To the contrary, in response to this statement, Plaintiff **ADMITS** he was

promoted to the "GS-12 Financial Specialist position" following a settlement agreement. See

Complaint at ¶¶6, 7, 9-13 (same admission); Exhibit 1 (Monty Dep.) at 140:24;141:11 (Plaintiff

testified he held his GS-12 Financial Specialist position until retiring from federal service in

2006).

   Instead of disputing Defendants' statement, Plaintiff argues that Defendants did not

"update" the written Position Description (PD) before promoting him, as required by the

agreement. However, it is undisputed that Plaintiff received a promotion and that the promotion

is documented in Defendants' personnel records. See Exhibit 1 (Monty Dep.) at 140:24;141:11;

Complaint at ¶¶6, 7, 9-13. In any event, Plaintiff's Complaint does not allege a breach of the

1998 settlement agreement.

   Defendants' Statement of Fact 5: Plaintiff purports to dispute this statement of fact,

however, he fails to offer any basis for a dispute and, again, makes non-responsive allegations

concerning the 1998 settlement agreement. Specifically, Plaintiff takes issue with the fact that

the 1998 promotion was accomplished by attaching a cover sheet to his existing PD, rather than

updating the PD. As noted above, this information is not relevant as Plaintiff's Complaint does

not assert a claim for violation of the agreement. Morever, while Plaintiff argues that "his

outdated PD contributed to the improper failure to grant him an accretion of duties promotion,"

he provides no citation to support this proposition. His opinion is non-responsive and does not

create a material fact for which there is a genuine dispute.

Defendants' Statement of Fact 24: Plaintiff attempts to create a disputed fact by

referencing (1) generic language from his Position Description regarding the need to have

"knowledge of accepted accounting principles and practices," and (2) the accounting-related

work he performed on the "Missing Participant Program." This general information is non-

responsive because it does not demonstrate that Plaintiff performed the duties of a trust

accountant.

The specific duties of a trust accountant are set forth in detail in Defendants' Statements

of Fact 13 through 23, which Plaintiff does not dispute; thus, he must be deemed to have

conceded them. See LCvR 7(h). Plaintiff also does not dispute Defendants' Statements of Fact

25, wherein Defendants provide that the accounting treatment Plaintiff used was *strictly limited*

to cash assets (whereas Trust accountants use accounting treatments on investment instruments

such as stocks, bonds, derivatives, futures, etc. See Exhibit 3 (Adams Dep.) at 143:11-17; 144:9-

15; 146:3-11; 147:-7; 148:9-14; 149:16-22) (emphasis added); Defendants' Statements of Fact 29

and 30. Because Plaintiff ADMITS that he never used accounting treatments for assets other

than cash, see Exhibit 1 (Montgomery Dep.) at 78:11 - 79:1, and he ADMITS that the accounting

7

duties of the trust accounts as described by Defendants are accurate, Plaintiff has clearly ADMITTED Defendants' Statement of Fact 24.

Defendants' Statements of Fact 32, 33, and 34:  Although Plaintiff asserts that these statements are "in dispute," he does not offer any evidence to support it.  To the contrary, Plaintiff admits that he had a conversation with Ms. Adams, telling her that "without a promotion [he] didn't see any merit in doing the [trust accounting] work."  See Exhibit 1(Monty Dep.) at 149:9-18.  Significantly, in his response here, Plaintiff ADMITS that the trust accountant duties Ms. Adams offered him were "*new duties*" - - in other words, duties he was not performing as a Financial Specialist.  Rather than disputing Defendants' Statements of Fact 32, 33, and 34, Plaintiff has clearly **ADMITTED** them.

Defendants' Statement of Fact 37:  Plaintiff attempts unsuccessfully to create a genuine dispute of material fact by claiming that "the COTR duties [he] came to perform were vastly expanded over those performed by Ms. Thomas at GS-13."  See Plaintiff's Statement at No. 37. As support for this assertion he offers only his **opinion** as provided in his EEO affidavit (see PX 1 at 6), which is insufficient to create a genuine dispute of a material fact.  Additionally, even though the number of contractors increased over time, see Defendants' Statements of Fact 43-46, this fact is immaterial because Plaintiff's overall, substantive duties were unchanged, i.e., he did not review the accounting work of the contractors.  See Exhibit 3 (Adams Dep.) at 141:13-22; 110:2-9.

Defendant's Statement of Fact 40:  Here again, Plaintiff purports to create a disputed issue of material fact without actually doing so.  Rather than present evidence to dispute this fact, Plaintiff references the testimony of Greg Smith, Deputy Director of Procurement, who testified

about the general role of a COTR at PBGC.  He did not testify specifically about Plaintiff's

COTR duties under the Bert Smith contract or about a COTR's duties in Plaintiff's branch - - the

Investment Accounting Branch.  Indeed, Mr. Smith does not know what branch within FOD

utilizes the services of the Bert Smith contract.  See PX 15 (Smith Dep.) at 50:22;51:1-15.  Mr.

Smith's testimony does not create a material fact for which there is a genuine dispute.

Significantly, even assuming Plaintiff had technical knowledge and oversight of the

contracted services, it is irrelevant because he concedes that Lisa Cho, GS-13 supervisory

accountant, reviewed *all substantive work* performed by the contract accountants and, that all

accounting work "has to be reviewed by the lead accountant before it's posted to the ledger."

Exhibit 3 (Adams Dep.) at 152:17-153:1; Defendants' Statement of Fact 41 (conceded by

Plaintiff).   Thus, rather than disputing this statement of fact, Plaintiff clearly ADMITS it.

Defendants' Statement of Fact 42:  Plaintiff claims this fact is "in dispute," yet provides

no evidence to support his position.  Plaintiff completely fails to address the statement, thus,

Defendants' Statement of Fact 42 should be deemed ADMITTED.  See LCvR 7(h).

Defendants' Statement of Fact 48: Once again, Plaintiff asserts there is a factual dispute

without providing any information to create such a dispute.  Rather than contest the fact

contained in this statement - - that the Missing Participant Program was not a contract - - Plaintiff

argues that he performed "accounting duties" in connection with this program.  Whether or not

Plaintiff performed accounting duties is non-responsive because it does not address whether the

Missing Participant Program involved a contract.  Defendants have already addressed the nature

and scope of Plaintiff's accounting-related duties in  connection with Statements of Fact 25 and

29 and, thus, will not repeat that discussion here.

9

Defendants' Statement of Fact 50:  Plaintiff again attempts to create a disputed issue of fact where none exists.  This statement is undisputed as Plaintiff ADMITS that his COTR duties did **not** take up the majority of every day of every week:

Q.  So your COTR duties, though, did not take up the majority of every day of every week, is that fair?

A.  Yes.

See Exhibit 1 (Monty Dep.) at 26:21-23.  Further, Plaintiff admits that it was "left up to [him]" to prioritize his work.  See id. at 26:15-20.  In any event, the amount of time Plaintiff spent on COTR duties is immaterial as the desk audit report concludes that those duties were **not** grade controlling.  See Exhibit 7 (Desk Audit Report) at 2-3 (Section VI).  Thus, the testimony regarding how much time Plaintiff spent performing COTR duties is immaterial, and does not create a genuine issue of material fact.

Defendants' Statement of Fact 55:  Plaintiff alleges that this statement is "in dispute," but fails to cite any evidence to support his position.  Plaintiff admits that Ms. Adams told him that she would raise his accretion of duties request with her supervisors.  See Complaint at ¶ 11. Moreover, it is undisputed that Plaintiff's managers acted on Plaintiff's request because it was evaluated as part of the desk audit, which resulted in the July 19, 2004 Report.  See Exhibit 7 (Desk Audit Report); Complaint at ¶ 13.

Defendants' Statement of Fact 57:  Plaintiff claims this statement is "in dispute," then fails to dispute it.  Instead, he adds information that neither responsive nor material.  It is undisputed that Ms. Adams asked Plaintiff to provide her with additional duties so that his PD could be updated.  The September 9, 2003 Memorandum, from Ms. Adams to Plaintiff speaks for itself regarding what she advised Plaintiff.  See Exhibit 7a.  Plaintiff's argument that his PD

10

"should have been updated earlier," relates to the 1998 settlement agreement, is non-responsive and, thus, insufficient to create a disputed issue of material fact.

Defendants' Statement of Fact 60:  Plaintiff claims this fact is "in dispute," however, in the first phrase of his response, he ADMITS that Cynthia Kyle conducted the Desk Audit.  The remainder of Plaintiff's response consists of an unsupported allegation that the desk audit is based on misrepresentations from PBGC officials, and a reiteration of immaterial facts previously provided in Statement of Fact No. 40.

In any event, the Desk audit report itself notes that the auditor, Ms. Kyle, actually observed Plaintiff perform his duties during "a face to face official desk audit."  Moreover, she considered Plaintiff's responses to a five-page, signed "Employee Interview Questionnaire," which is attached to the audit report.  Notably, question No. 2 asked Plaintiff whether his position description was accurate, and if not, to "list the new duties."  Plaintiff did *not* state that his PD was inaccurate or identify any new duties.  See Exhibit 7 (Audit Report Questionnaire) at p.1, Question 2. In response to Question 3, asking for "the overall purpose and function of your job with the most difficult tasks first, Plaintiff listed three job duties: (1) "Analyze and reconcile financial reports;" (2) "Reconciliation and coordination of missing participant program;" and (3) "Contracting Officer Technical Representative."  Id. at 1, Question 3.  Plaintiff expanded on the manner in which he performed his duties in response to Questions 4 through 18.  Id. at 2-5, Questions 14-18. Contrary to what Plaintiff maintains, Ms. Kyle clearly considered Plaintiff's own description of his duties, as those duties are recited and discussed in sections V and VII of the Report.  See Exhibit 7 (Audit Report) at 1(Section V) and 2 (Section VI).

Of note, in response to the auditor's Questions 17 and 18, see Exhibit 7 (Audit Report

11

Questionnaire), when specifically asked to identify any changes to the nature and complexity of his job, Plaintiff cited *only* his COTR duties.[3]  The auditor addressed these duties before concluding that they were not grade controlling.  See Audit Report at 2-3 (Section VI). There is no indication from the Report that the auditor based her findings on any "misrepresentation."  To the contrary, they appear to be based on information Plaintiff provided. See id.  Neither Deputy Procurement Director Smith's general testimony about the role of a COTR to "monitor"  contract performance (PX 15) nor the generic COTR instructions contained in the appointment memorandum given to all PBGC COTRs (PX 17) undermine the Audit Report findings, as Plaintiff seems to suggest.  Smith's testimony as well as the COTR Memorandum address only general COTR responsibilities, whereas the auditor based her findings on Plaintiff's specific COTR duties under the Bert Smith contract.  Compare Exhibit 7 (Audit Report) at 2-3 (Section VI) and Questionnaire at 4 (Question 17) with PX 17 (COTR Appointment Memorandum) and PX 15 (Smith Dep.) at 31:5-22;33:1-22;34:1-22;34:1-22;35:1-8; 50:1-22;51:1-22;52:1-20 and PX. 17 (CNTR Appointment Memorandum).  In sum, Plaintiff's various assertions are not sufficient to create any issues of disputed fact with respect to Statement of Fact 60.

Defendants' Statement of Fact 63:  Plaintiff does not dispute this fact, instead, he attempts to

---

[3]Audit Report Question 17 and Plaintiff's response are as follows: "17.  Has [sic] your job duties changed within the last year?  If so give specific list of duties. Yes.  COTR duties and responsibilities to Professional Services Contract were assigned a year and nine months ago.  Monitor contractor performance.  Maintain records, logs, and reports that document action taken by the contractor and PBGC during the duration of the contract.  Complete various budgetary and financial reporting requirements and analyses.  Verify and certify for payment all billings related to services performed.  Complete modifications to contracts and work on conjunction with Procurement Staff in changes to the contract." See Exhibit 7 (Desk Audit Report Questionnaire), at 4 (Question 17). Nowhere in the above answer does Plaintiff state he performed or reviewed any trust accounting work.  See id.

manufacture a dispute concerning the information upon which the Report is based. The Report states it is based on information provided by Plaintiff during a face-to-face audit on December 31, 2003, Plaintiff's written responses to a five-page Questionnaire, and information provided by Ms. Adams. See Exhibit 7 (Desk Audit Report) at 1 (Section IV). Contrary to Plaintiff's suggestion, there is no evidence that Ms. Adams disagreed with **any** information Plaintiff provided to the auditor; rather, the Report indicates that she signed-off on that information. See id. In sum, there is no disputed issue of a material fact regarding Statement of Fact 63.

Defendants' Statement of Fact 64:   Here, Plaintiff attempts to create a dispute where none exists, by trying to show a contradiction between what Ms. Adams said, and what Ms. Isaac heard regarding Plaintiff's duties. When read in context, it is plain that there is no contradiction. See PX 30 at 10:25 - 11:21. Even assuming there is a contradiction, it is irrelevant because Plaintiff admits that he *never* used accounting treatments for corporate stock, corporate bonds, derivatives, and asset-backed securities, which demonstrates that Plaintiff did not have "[e]xperience in investment accounting with an emphasis on financial statement reporting." See Exhibit 1 to Defendants' Motion (Montgomery Dep.) at 78:11 - 79:1; PX30 at 3.

Defendants' Statement of Fact 66:   Plaintiff ADMITS Statement of Fact 66. Insofar as Plaintiff argues with the basis for the conclusions in the Desk Audit Report, that is irrelevant to this Statement of Fact.

Defendants' Statements of Fact 67, 68, 69, and 70:   In these statements, Defendants simply cite the Desk Audit Report's findings with respect to Plaintiff's COTR duties. Plaintiff ADMITS that the Report contains the conclusions cited, but asserts that "there are issues of fact regarding the basis" for the findings. Irrespective of Plaintiff's opinion that his COTR duties

should have been grade controlling, he concedes that he did not perform the "substantive" or

"technical" review of the contractors' accounting work.  That review was performed by Lisa Cho,

a GS-13 supervisory accountant.  See Defendants' Reply to Statement of Fact No. 40, supra at 8-

9; Defendants' Statement of Fact No. 41 (to which Plaintiff did not respond); Exhibit 7 (Audit

Report) at 2-3 (Section V) ("In order for work to rise to the level of actually affecting the grade

of his position, he would have to possess the qualifications to 'oversee' the work from a

completely 'technical' aspect or to be an Accountant").

     Defendants' Statement of Fact 75:  Plaintiff asserts, without any citation to the record,

that there is a dispute concerning "what qualifies" as "one year of specialized experience."  The

absence of support is not surprising as there is no record evidence to demonstrate a dispute.

Plaintiff's opinion that he could have been minimally qualified for the accounting position

because he  "worked within the Investment Accounting Branch for ten years," is immaterial.

Horvath v. Thompson, 329 F.Supp. 2d 1, 7 (D.D.C. 2004) ("[plaintiff's] evidence utterly fails to

demonstrate superiority, no less a stark one.  Instead, his argument amounts to an invitation to

second guess defendant's promotion decision involving qualified candidates, an invitation the

Court cannot accept"); Tolson v. James, 315 F.Supp. 2d 110, 116 (D.D.C. 2004); Waterhouse v.

Dist. of Columbia, 124 F.Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989, 997 (D.C. Cir. 2002)

(citing Smith v. Chamber of Commerce of the United States, 645 F.Supp. 604, 608 (D.D.C.

1986) ("[p]laintiff cannot establish pretext simply based on his own subjective assessment of his

own performance, for 'plaintiff's perception of himself, and of his work performance, is not

relevant.  It is the perception of the decision maker which is relevant.'").

     Defendants' Statement of Fact 76:  The vacancy announcements speak for themselves,

therefore, this fact is indisputable. Further, Plaintiffs ADMITS that he did not submit any

college transcripts with his applications. See Exhibit 1 (Montgomery Dep.) at 102:21 - 103:13;

105:6-19. Here, Plaintiff provides non-responsive information concerning how PBGC's human

resources department may treat applications with missing materials. Even assuming, arguendo,

that there are inconsistencies, it is not material here. Plaintiff fails to show that another applicant

for either of the accounting positions for which he applied was treated more favorably by having

an opportunity to supply missing information.[4] Moreover, it is undisputed that Plaintiff was also

found *not* minimally qualified because he did not have "one year of specialized experience at or

equivalent to the next lower grade level . . . . ." See Defendants' Reply to Statement of Fact 75,

supra, at 14. Therefore, even if the Human Resources Department ("HRD") had given Plaintiff

credit for twenty-four (24) hours of accounting education, he still would **not** have been found

minimally qualified for either accounting position. Id. In sum, Plaintiff's assertions are

irrelevant and insufficient to create a disputed issue of material fact.

　　　Defendants' Statement of Fact 78 and 79: Plaintiff purports to dispute both Statements,

citing his application (where he noted he had completed 24 semester hours, though transcripts

were not included), his supervisors' knowledge that he had taken the courses, and Ms.

Pilipovich's August 6, 2004 Memorandum. (PX 26). None of these facts is responsive or

material. It is undisputed that Plaintiff was found not minimally qualified for **two** reasons: (1)

---

[4]Plaintiff asserts that Ms. Isaac "assisted a white female (Lynn Christopher) in resubmitting her incomplete application in connection with another vacancy announcement (not at issue in this case). Plaintiff relies purely on conjecture. At deposition, Plaintiff asked Ms. Isaac if she had assisted "a Lynn Christensen" with her application, to which Ms. Isaac responded that she did not, and that "[the] name doesn't ring a bell." Exhibit 8 (Isaac Dep.) at 115:20-22;116:1-3.

lack of transcripts and (2) lack of experience.  <u>See</u> Reply to Statement of Fact 75.  Additionally, Plaintiff fails to identify another applicant who did not submit transcripts, but who nevertheless was considered for the accounting positions.

       <u>Defendants' Statement of Fact 80</u>:   As noted above in Reply to Plaintiff's Response to Defendants' Statement of Fact 75, Plaintiff cites no record evidence of a dispute concerning "what qualifies" as "one year of specialized experience."  <u>See</u> Reply to Statement of Fact 75. Plaintiff admits that he did not perform the same duties as the trust accountant in IAB.  <u>See</u> Exhibit 1 (Montgomery Dep.) at 87:19-22; 88:1-25; 89:1; <u>see</u> <u>also</u> Defendants' Reply to Statements of Fact 24, 25, and 29.  Thus, Ms. Adams's statement to Mr. Lattimer to that same effect does not create a disputed issue of material fact, rather, it is consistent with Plaintiff's admissions.  In any event, what Ms. Adams told Mr. Lattimer about Plaintiff's accounting experience is immaterial, because Mr. Lattimer played no role in determining whether Plaintiff was minimally qualified for the accounting positions.  Further, Ms. Isaac's recollection of what Ms. Adams told her is hearsay and, thus, inadmissible evidence.  <u>See</u> <u>Gleklen v. Democratic</u> <u>Cong. Campaign Comm., Inc.</u>, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (holding hearsay evidence insufficient in sex discrimination case to avoid summary judgment:  "Verdicts cannot rest on inadmissible evidence.  Gleklen's evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. . . .  It therefore counts for nothing.").

       <u>Defendants' Statement of Fact 81</u>:  It is undisputed that  "experience in *investment* accounting" is *the* "selective factor" in both accountant vacancy announcements.  Both announcements provide that "if you do not produce evidence of this knowledge, skill or ability, you will not receive further consideration for this position."  <u>See</u> Exhibit 12 (Vacancy

Announcement JI04-0105) at 3 and Exhibit 16 (Vacancy Announcement JI04-0143) at 3 (emphasis added).  It is undisputed that Plaintiff had no experience in using investment accounting treatments.  See Reply to Statement of Fact 25 (uncontested by Plaintiff).  Plaintiff's opinion that he was minimally qualified for the position is insufficient to create a disputed issue of material fact.  See Waterhouse v. Dist. of Columbia, 124 F.Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989, 997 (D.C. Cir. 2002) (citing Smith v. Chamber of Commerce of the United States, 645 F.Supp. 604, 608 (D.D.C. 1986) ("[p]laintiff cannot establish pretext simply based on his own subjective assessment of his own performance, for 'plaintiff's perception of himself, and of his work performance, is not relevant.  It is the perception of the decision maker which is relevant.'").

    Defendants' Statement of Fact 82:  Plaintiff's opinion that he was qualified for the GS-13 Accountant position is irrelevant as to this Statement of Fact, because it concerns Ms. Adams's decision not to select anyone from the applicant pool, of which Plaintiff was not even a member.  Plaintiff concedes that the vacancy announcement for the GS-13 Accountant position was cancelled and that no one was hired for that position.  The fact that Ms. Adams issued another vacancy announcement, to include GS-12 and GS-13 applicants, is irrelevant as to whether Plaintiff was minimally qualified at either grade.  See Defendants' Statement of Fact 84.

    Defendants' Statement of Fact 88:  Plaintiff purports to "dispute" this statement by (1) referencing his responses to Statements of Fact 76, 78, 79, and 80; and (2) arguing that his supervisors' willingness to "convert" him to the "510 accounting series at a GS-13 level," suggests that he must have been qualified for the GS-12/13 Accountant position.  Neither of Plaintiff's assertions creates a factual dispute.  Indeed, as Defendants note in reply to Statements

17

of Fact 76, 78, 79, and 80, it is **undisputed** that Plaintiff did not submit college transcripts, and it is a personnel specialist, *not* Plaintiff's supervisors, who determined that Plaintiff was not minimally qualified based on this missing element.  Moreover, Plaintiff concedes that he only worked with cash assets, <u>see</u> Statement of Fact 25, which fails to satisfy the minimal requirement of having "one year of specialized experience at or equivalent to the next lower grade level." <u>See</u> Exhibit 3 (Adams Dep.) at 132:5-10; 134:16-22 (Plaintiff's accounting-related duties could be performed at the GS-7 grade level).  Finally, the fact that Plaintiff's supervisors (as opposed to personnel specialists tasked with ranking applications) offered Plaintiff the opportunity to take on additional accounting responsibilities, so that they could transfer him to a GS-12 in the accounting series (an offer Plaintiff declined), demonstrates that they were supportive of his career, but does not create an disputed issue of material fact with respect to his qualifications to compete for an accountant position.

Defendants' Statement of Fact 90: Although Plaintiff purports to dispute this statement of fact, he **ADMITS** it in the first phrase of his response.  Plaintiff goes on to add his theory of the case, by suggesting that if he had "been properly qualified," his name should have "gone to Ms. Adams prior to Graham's," and that the outcome of the selection would have been different.  Not only is this theory predicated on unsupported conclusions, but also ignores Ms. Graham's superior qualifications, which include a four-year degree in finance, a Masters in accounting, 15 years experience in the accounting field, and specific experience in investment accounting.  <u>See</u> Exhibit 3 (Adams Dep.) at 120:1-8; 160:11-20; 161:16-17.

Defendants' Statement of Fact 91:  Plaintiff purports to dispute this statement, and refers the Court to Statements of Fact 90 and 98, neither of which pertain to Ms. Graham, nor contain

any information to dispute Ms. Graham's qualifications.[5] Thus, Plaintiff clearly concedes Ms. Graham's qualifications.

       <u>Defendants' Statement of Fact 93</u>:  Plaintiff purported dispute regarding whether HRD lost his status application for Vacancy Announcement 0138, is immaterial to his claims of discrimination and retaliation because Plaintiff admits that the HRD receptionist who accepted his application(s) did not discriminate or retaliate against him.  <u>See</u> Exhibit 1 (Montgomery Dep.) at 156:11 - 157:3.  Beyond that, Plaintiff can only provide speculation as to who allegedly "lost" his application.

       <u>Defendants' Statement of Fact 98 and 99</u>:  Plaintiff purports to dispute facts but then fails to do so.  In a last ditch effort to create a material dispute, Plaintiff suggests that PBGC failed to follow its  internal procedures, and/or the Collective Bargaining Agreement (CBA), in announcing the Collections Analyst vacancy, and/or reviewing the applications.  His assertions are immaterial because they do not contradict that (1) the non-status announcement for which Plaintiff applied was cancelled, and, (2) the Certificate of Eligibles did not reach the selecting official.  Even assuming, <u>arguendo</u>, that PBGC did not follow its internal procedures, Plaintiff

---

     [5]As the Court held in <u>Tolson v. James</u>, "[a]n employer has discretion to choose among qualified candidates for a position, . . . and absent a demonstrably discriminatory motive, an employer's personnel decision - such as the choice of relevant qualifications - simply cannot be second-guessed."  315 F. Supp. 2d 110, 117 (D.D.C. 2004) (<u>citing</u> <u>Fischbach v. Dist. of Columbia Dep't of Corr.</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).  <u>See also</u> <u>Stewart v. Ashcroft</u>, 352 F.3d 422, 429 (D.C. Cir. 2003) ("Because courts are not super-personnel department[s] that reexamine[] an entity's business decision[s], we defer to the Government's decision of what nondiscriminatory qualities it will seek.") (internal citations and quotation omitted); <u>Horvath v. Thompson</u>, 329 F. Supp. 2d 1, 8 ("it was within the selecting official's prerogative to place greater value on Ms. Williams' managerial experience and her more extensive experience within CRD.").

fails to show that he was treated differently from any other applicant, or that the alleged failure was the result of unlawful discrimination or retaliation.

      <u>Defendants' Statement of Fact 103:</u>  Plaintiff ADMITS that he did not check the "reprisal" box on the Complaint form.  Moreover, while he claims that he raised retaliation by (1) citing 5 U.S.C. § 2302(b) on the Complaint form, and (2) mentioning his "previous complaint" in his affidavit to the EEO investigator, neither assertion is sufficient to create a dispute.  Although Plaintiff's Complaint does reference 5 U.S.C. § 2302 (a) and (b), that provision (with one exception) is inapplicable to PBGC, <u>see</u> 5 U.S.C. § 2302(a)(2)(C)(I), and, in any event, does not cover retaliation for participating in the EEO process.  <u>See id</u>.  Similarly, though Plaintiff references his "previous" 1998 EEO case as an example of  "continuing . . . unlawful discrimination," *nowhere* in his 18-page Affidavit to the EEO investigator does he make a reference to, or a claim for, retaliation.  <u>See</u> Exhibit PX1 (Montgomery 6/14/04 Aff.) at 12:1-23 to 18:1-17.  Thus, contrary to Plaintiff's conclusory statements, neither the statute nor his EEO Affidavit "put the Agency on notice" of an alleged retaliation claim in connection with EEO Complaint 03-10 (Accretion of duties non-promotion).

      <u>Defendants' Statement of Fact 106:</u>  <u>See</u> Reply to Statement of Fact 103.

### III.   <u>CONCLUSION</u>

      Based upon the foregoing, Defendants respectfully submit that Plaintiff has failed to raise any genuine dispute as to any of Defendants' material facts.

                    Respectfully submitted,

                       /s/
                    JEFFREY A. TAYLOR, DC Bar #498610
                    United States Attorney

/s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


/s/
KAREN L. MELNIK D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0338

21