UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DELARSE MONTGOMERY, JR.,          :
                                  :
          Plaintiff,              :     Civil Action No.:    05-2157 (RMU)
                                  :
     v.                           :     Document No.:        14
                                  :
ELAINE CHAO, Chairwoman of the    :
Pension Benefit Guaranty Corp. *et al.*, :
                                  :
          Defendant.[1]           :

# MEMORANDUM OPINION

### Granting the Defendant's Motion for Summary Judgment

## I. INTRODUCTION

This employment discrimination case comes before the court on the defendant's motion for summary judgment. The plaintiff alleges that the Pension Benefit Guaranty Corporation ("PBGC") discriminated and retaliated against him on the basis of race, gender and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 633a *et seq.* Specifically, the plaintiff contends that the defendant discriminated and retaliated against him when it failed to promote him and when it did not select him for positions as an accountant and a collections analyst. Because the plaintiff has not met his burden of showing that the defendant's proffered non-discriminatory reasons for its decisions are pretextual, the court grants the defendant's motion for summary judgment.

---

[1] The plaintiff brings suit against Elaine Chao, Chairwoman of the Pension Benefits Guaranty Corporation ("PBGC") and Bradley Belt, PBGC's Executive Director, in their official capacities. For simplicity, the court refers to the defendants collectively as the PBGC or as a singular defendant.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff is an African-American man who was 58 years old at the time he filed the instant suit.  Compl. ¶ 4.  At all times relevant to the complaint, the plaintiff was employed as a GS-12 Financial Specialist with PBGC's Investment Accounting Branch ("IAB") in the Financial Operations Department.  *Id.* ¶ 6.

In August 2001, Christine Thomas, a white female who was employed at the IAB as a supervisory accountant at a GS-13 level, resigned.  *Id.* ¶ 8.  In addition to her duties as a supervisory accountant, Thomas had served as a Contracting Officer Technical Representative ("COTR") for PBGC's contract with Bert Smith, an accounting firm hired by PBGC to perform accounting work on pension plans.  *Id.*; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 8.  As a COTR, Thomas served as a liaison between Berth Smith and PBGC.  *Id.* at 8-9.  The plaintiff's supervisor, Cynthia Adams, an African-American female employed as IAB's Branch Chief at a GS-14 level, performed Thomas' COTR duties after Thomas retired.  Compl. ¶ 8.  In March 2002, Adams assigned the COTR duties to the plaintiff.  *Id.*

After assuming Thomas' COTR duties, the plaintiff asked Adams on numerous occasions to update his position description and performance standards to reflect the COTR duties.  *Id.* ¶ 9.  The plaintiff reiterated his earlier requests in January 2003, when he additionally told Adams that he thought he deserved a grade increase (to GS-13) based on the "rather extraordinary accretion of [COTR] duties."  *Id.* ¶ 10.  The plaintiff formally requested a promotion based on accretion of duties at his April 2003 quarterly review.  *Id.* ¶ 11.  "Having heard nothing concerning his accretion of duties promotion request, plaintiff contacted an EEO counselor . . . [in] June 2003."

*Id.* ¶ 12.

On September 9, 2003, Adams told the plaintiff that his request for a promotion was denied. *Id.* The plaintiff then filed a formal Equal Employment Opportunity Commission ("EEOC") charge on October 1, 2003, alleging that the defendant's refusal to promote him to a GS-13 level based on his accretion of COTR duties constituted race, gender, and age discrimination. *Id.* The plaintiff's EEOC charge also alleged that PBGC violated the Equal Pay Act by paying him less for performing the COTR duties than it paid to female employees. *Id.*

In response to the EEOC charge, Cynthia Kyle, a Human Resources contractor, conducted a desk audit at the plaintiff's work station. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 13. Kyle interviewed the plaintiff as well as Adams and reviewed other documentation in an effort to "obtain a 'full picture'" of the plaintiff's work responsibilities. *Id.* at 14. The report summarizing the results of the desk audit indicates that the plaintiff's financial specialist position is a GS-11 position. *Id.* "With respect to COTR duties, the Report stated that all PBGC employees assigned as COTRs have the same tasks or responsibilities, regardless of their position or grade level." *Id.* The report further concluded that the plaintiff's COTR duties were not "grade-controlling." *Id.* Specifically, the report stated that "for the work to rise to the level of actually affecting the grade of his position, he would have to possess the qualifications to 'oversee' the work from a completely 'technical' aspect or be an Accountant which according to . . . Adams, he is 'not.'" *Id.* at 15.

During the pendency of the EEOC proceedings, the plaintiff applied for a GS-13 accountant position at the IAB. Compl. ¶ 13. Concluding that neither the plaintiff nor any other applicant had the necessary experience for the job, Def.'s Mot. at 17, the defendant cancelled the

3

vacancy announcement for the GS-13 accountant position, Compl. ¶ 14.  The defendant then re-advertised the position at the GS-12/13 level.  *Id.*  Although the plaintiff also applied for the GS-12/13 position, the defendant concluded that the plaintiff did not have the minimum qualifications for the job.  *Id.*  The defendant ultimately selected Lafaye Graham, an African-American woman with "a four-year degree in finance, a Master's degree in accounting, and 15 years of experience in the accounting field, and specific accounting experience in investment accounting," for the position.  Def.'s Mot. at 19.  Believing that the defendant's failure to select him for either accounting position constituted discrimination, as well as retaliation, in "late 2004" the plaintiff filed a second EEOC charge.  Compl. ¶ 14.

After filing his second EEOC charge, the plaintiff applied for a position as a collections analyst at the GS-13 level.  *Id.* ¶ 15.  The plaintiff alleges that he applied both as a status applicant and a non-status applicant.  A status applicant is one who has "competitive status within the government" and does not have to "recompete" for the position.  Pl.'s Opp'n at 22.  The defendant, however, alleges that it only received a copy of the non-status application.  Def.'s Mot. at 20.  Eventually, the defendant gave the GS-13 collections analyst position to a candidate from the status list.  *Id.*  Because an "in-house, qualified, status applicant" was selected, the defendant, in accordance with its selection procedures, cancelled the vacancy announcement for the non-status collections analyst position.  *Id.*  The plaintiff thereafter filed a third EEOC charge, alleging that the defendant's failure to select him for either collections analyst position constituted discrimination and retaliation.  Compl. ¶ 15.

**B. Procedural History**

The complaint alleges that the defendant's actions in relation to the accretion of duties promotion, the accountant positions and the collections analyst positions constitute discrimination and retaliation. On February 13, 2007, the defendant filed a motion for summary judgment. The court now turns to the defendant's motion.

**III. ANALYSIS**

The plaintiff alleges that the defendant discriminated against him when it failed to give him an accretion of duties promotion to a GS-13 level based on his COTR duties. The plaintiff also alleges that the defendant discriminated and retaliated against him when it did not select him for the GS-13 and GS-12/13 accountant positions in his own unit and when it did not select him to fill either the status or non-status collections analyst positions. The court examines each of these claims in turn below.

**A. Legal Standard for a Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record, *Green*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Green*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B. Legal Standard for Gender, Age and Race Discrimination

Generally, to prevail on a claim of discrimination under Title VII or the ADEA, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race or gender discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982); *Miller v. Lyng*, 660 F. Supp. 1375, 1377 (D.D.C. 1987). Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position

7

and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves*, 530 U.S. at 142; *Hall*, 175 F.3d at 1077; *Paquin*, 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998)) (en banc). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the

8

employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff.  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289).  The plaintiff need not present evidence in each of these categories in order to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case.  *Id.* at 1291.

### C.  Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim).  The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [ retaliation].  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . .  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . .  The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged

action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEOC complaints. *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002). As for the second prong, "[t]he anti-retaliation provision seeks to . . . prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 126 S. Ct. at 2415 (citations omitted). Additionally, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no

10

causality at all").

## D. The Court Grants the Defendant's Motion for Summary Judgment

### (1) Failure to Promote Based on Accretion of Duties

The defendant moves for summary judgment on the plaintiff's claim that PBGC's failure to promote him based on accretion of COTR duties constitutes age, gender and race discrimination.[2]  Def.'s Mot. at 29.  In particular, the defendant contends that the plaintiff fails to make out a prima facie case of discrimination because the plaintiff has not presented evidence that "a similarly situated person outside of the plaintiff's protected class requested and received a promotion based exclusively on increased COTR duties."  *Id.*  The defendant also asserts that the plaintiff fails to show that PBGC's legitimate, non-discriminatory reasons for not promoting him are pretextual.  *Id.* at 32.  In response, the plaintiff conflates the arguments about establishing a prima facie case with rebutting the defendant's non-discriminatory reason.  *See* Pl.'s Opp'n at 28-31 (stating that he has made out a prima facie case because he has raised an inference of discrimination, and that the inference of discrimination rebuts the defendant's proffered non-discriminatory reason).  Nevertheless, the court presumes that the plaintiff argues both that he does make out a prima facie case and that he has presented information to rebut the defendant's proffered, non-discriminatory reason.

Assuming *arguendo* that the plaintiff makes out a prima facie case of discrimination, the

---

[2]   It is unclear whether the plaintiff claims that the failure to give him an accretion of duties promotion constitutes retaliation.  *See generally* Compl.  As described *infra*, however, the plaintiff fails to rebut the defendant's proffered non-discriminatory reason for not promoting him on the basis of accretion of duties.  Therefore, the plaintiff has not met his burden of showing that the defendant's proffered, non-discriminatory reason is pretextual.  Accordingly, if the plaintiff is indeed alleging that the defendant's failure to give him an accretion of duties promotion constitutes retaliation, the court denies the claim.

court concludes that the defendant has met its burden of providing a non-discriminatory reason for its actions. Specifically, the defendant claims that it did not promote the plaintiff to a GS-13 level because, according to the results of the desk audit, the plaintiff's COTR duties were not grade-controlling. Def.'s Mot. at 32. That is, the plaintiff's COTR duties involved mere oversight, rather than accounting review, and were not technical in nature. *Id.* Because the defendant has proffered a legitimate, nondiscriminatory reason for its decision, the defendant has met its burden. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining that the defendant's "burden is one of production, not persuasion").

    As the defendant has proffered a legitimate, nondiscriminatory reason for its actions, the burden shifts to the plaintiff to show that this reason is a pretext. The plaintiff attempts to establish pretext in a number of ways. First, he argues that "non-Black male employees within the Financial Operations Division received accretion of duties promotions." Pl.'s Opp'n at 28. Second, he asserts that "he had the necessary qualifications and increased workload to receive an accretion of duties [promotion]." *Id.* Third, the plaintiff claims that his supervisors gave false information to the desk auditor.

    The plaintiff's attempt to show pretext by arguing that non-African-American employees received promotions based on accretion of duties is unavailing. The court's conclusion is based on the plaintiff's failure to show that employees with qualifications similar to his were promoted on the basis of accretion of COTR duties during the relevant time period. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (explaining that "[a] plaintiff must [] demonstrate that all of the relevant aspects of her employment situation were nearly identical" to those of the allegedly similarly situated employees) (internal quotations omitted). Although the plaintiff argues that

five non-African-Americans received promotions based on accretion of duties, he does not establish that any of these other employees received a promotion based on increased COTR duties. *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 97 (D.D.C. 2005) (granting summary judgment to the employer because no reasonable jury could conclude that the plaintiff was similarly situated to employees who "had different background experience, had different responsibilities, and in many cases had a different supervisor"); *see also Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691-691 (8th Cir. 2002) (stating that "[w]hile evidence of disparate treatment can of course support an assertion of pretext, the employee or employees with whom a plaintiff wishes to be compared must have been similarly situated to the plaintiff in all relevant respects") (citation and quotation omitted). At his deposition, the plaintiff stated that three of the five allegedly similarly-situated employees did not receive their promotions on the basis of increased COTR duties. Pl.'s Opp'n, Ex. 1 ("Montgomery Dep.") at 35-38. He also stated that he had "no idea" whether the other two employees were promoted on the basis of COTR duties. *Id.* at 34. Additionally, none of the five allegedly similarly-situated employees had the same position as the plaintiff and none worked in his branch. Because the plaintiff has not established that other similarly-situated employees received promotions on the basis of increased COTR duties, he fails to show that the defendant's proffered non-discriminatory reason is a pretext.

  The plaintiff's argument that he has established pretext because "he had the necessary qualifications and increased workload to receive an accretion of duties [promotion]," Pl.'s Opp'n at 28, is also unavailing. The defendant states that the desk audit showed that the plaintiff's COTR duties did not affect his grade level because he did not perform any technical oversight. Def.'s Mot. at 32. Although the plaintiff claims that he did, in fact, perform technical oversight

13

"[a] plaintiff's subjective belief as to [his] qualifications is irrelevant." *Thompson v. Rice*, 422 F. Supp. 2d 158, 180 (D.D.C. 2006). Indeed, to establish pretext the plaintiff must show both that the defendant's proffered reason is false and that discrimination was the real reason for the failure to promote him, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993), neither of which the plaintiff's conclusory assertions, *see e.g.*, Def.'s Mot. Ex. 1 at 54-57, establish.

With respect to the plaintiff's assertion that Adams lied to the desk auditor so as to skew the audit's results, the court also concludes that the plaintiff has failed to demonstrate pretext. Although the plaintiff claims that the December 2003 desk audit was based on an outdated position description, the plaintiff did not dispute the alleged inaccuracy of his position description during the desk audit.³ Def.'s Reply at 13. Further, the plaintiff claims that Adams falsely described his COTR duties as consisting of administrative, rather than technical, oversight. Pl.'s Opp'n at 30. Although the plaintiff may disagree with Adams' characterization of the substantive nature of his work, that alone does not establish that Adams lied to the desk auditor so as to harm the plaintiff's chances of securing a promotion. "The mere assertion [by the plaintiff] that [the plaintiff] was more qualified is insufficient to establish pretext." *Van Slyke v. Northrop Grumman Corp.*, 17 Fed. Appx. 154, 157 (4th Cir. 2001). Because the plaintiff fails to adequately rebut the defendant's nondiscriminatory reasons for its decision to deny his request for an accretion of duties promotion, the court grants summary judgment for the defendant on

---

³ The court further notes that the plaintiff did not appeal the desk audit and his position classification. *Lutes v. Goldin*, 62 F. Supp. 2d 118, (D.D.C. 1999) (concluding that the plaintiff was not qualified for a level increase because, *inter alia*, he did not appeal the results of desk audits).

this claim.[4]

### (2) The GS-13 Accountant Position

The defendant argues that the court should grant summary judgment in its favor on the plaintiff's claim that the PBGC discriminated and retaliated against him when it failed to grant him the GS-13 accountant position. Def.'s Mot. at 25. The defendant contends that it cancelled the position and that it did not select anyone to fill the vacancy because Adams was not satisfied with the level of experience of the applicants for the position. *Id.* at 27-29. Not only does the plaintiff not attempt to rebut this non-discriminatory reason, but the plaintiff also fails to address the GS-13 position in the argument section of his opposition brief. Moreover, the plaintiff's factual descriptions in his opposition brief do not provide any evidence that the defendant's proffered reason is pretextual. "When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Fox v. American Airlines, Inc.*, 2003 WL 21854800, *2 (D.D.C. Aug. 5, 2003). Accordingly, the court grants summary judgment in favor of the defendant on the plaintiff's claim that his non-selection to the GS-13 accountant position constitutes discrimination.

### (3) The GS-12/13 Accountant Position

The defendant also moves for summary judgment on the plaintiff's claim that his non-

---

[4] The plaintiff, a financial specialist, additionally alleges that the defendant violated the Equal Pay Act ("EPA"), 42 U.S.C. §§ 206 *et seq.*, by paying him less than Thomas, a supervisory accountant, "despite the fact that they both performed COTR duties." Pl.'s Opp'n at 44. The court dismisses the EPA claim because the plaintiff fails to present any evidence that his job was equal in terms of skill, effort, and responsibility to Thomas' job, *Gunther v. County of Wash.*, 623 F.2d 1303, 1311 (9th Cir. 1979) (holding that the Equal Pay Act "applies only to situations where a plaintiff contends there has been a denial of equal pay for equal work. It does not apply, for instance, where the plaintiff is performing comparable (but not substantially equal) work").

selection to the GS-12/13 accountant position constitutes discrimination and retaliation. The defendant argues that the plaintiff fails to establish a prima facie case of discrimination or retaliation because the plaintiff lacked the requisite accounting experience for the position and because the plaintiff did not – as required by the vacancy announcement – submit transcripts showing that he had completed the required 24 college credits in accounting. Def.'s Mot. at 27. The plaintiff, on the other hand, argues that he did have the requisite experience and that Adams "misstated" his qualifications to the Human Resources department so as to disqualify him from consideration for the position. Pl.'s Opp'n at 33. With respect to the argument that he did not submit his transcripts, the plaintiff asserts that the defendant knew he had the required college credits and that it was the defendant's practice to contact and alert candidates who submitted incomplete job applications. *Id.* at 31-32.

   Assuming *arguendo* that the plaintiff had established a prima facie case of discrimination and retaliation, the court concludes that the plaintiff has failed to show that the defendant's non-discriminatory reasons for selecting another candidate constitute pretext. The plaintiff's contention that he possessed the required skills for the position is based on his own opinions of his skills, and such allegations do not suffice for him to survive summary judgment. *Buggs v. Powell*, 293 F. Supp. 2d 135, 144 (D.D.C. 2003) (stating that "the plaintiff's opinion of the relative merits of her credentials as opposed to those of the selected individuals are irrelevant"); *see also Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F.3d 989, 997 (D.C. Cir. 2002), *Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 608 (D.D.C. 1986) (noting that the "plaintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decisionmaker which is relevant").

A reasonable jury could infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job." *Aka*, 156 F.3d at 1294. In this case, however, the plaintiff has not shown that he was significantly better qualified than the applicant who got the job. In contrast to the plaintiff, Graham had a four-year degree in finance, a Master's degree in accounting, and 15 years of experience in the accounting field and experience in investment accounting. Def.'s Mot. at 28 & Ex. 3 at 120, 160. The plaintiff, on the other hand, only had a two-year degree in accounting, and his experience was limited to accounting for cash assets. Def.'s Mot. Ex. 3 at 151; Pl.'s Reply at 8. Because in comparing Graham's background to the plaintiff's background, a jury could not reasonably on this record conclude that the plaintiff was significantly better qualified for the position, the court grants the defendant's motion for summary judgment on the discrimination and retaliation claim related to the GS 12/13 accountant position. *Carter v. George Washington Univ.*, 387 F.3d 872, 881 (D.C. Cir. 2004).

### (4) The Status Collections Analyst Position

The defendant argues that the court should grant it summary judgment on the claim that it discriminated and retaliated against the plaintiff by not selecting him for the status collections analyst position. In particular, the defendant argues that the plaintiff did not submit an application for the position. Def.'s Reply at 10. The plaintiff, for his part, argues that "there is an issue of fact regarding whether [he] submitted the status application." Pl.'s Opp'n at 33.

Assuming that the plaintiff did indeed submit an application,[5] the plaintiff once again fails to establish that the defendant's reason for not selecting him is pretextual. The defendant

---

[5] The court notes that the plaintiff's failure to apply for the status position would defeat the claim that his non-selection for the position constitutes discrimination and retaliation. *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003).

asserts that it did not select the plaintiff for the position because it did not receive the plaintiff's application. Def.'s Reply at 10. In an employment discrimination case, the relevant inquiry is whether the defendant intentionally discriminated against the plaintiff. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999). There is nothing on the record from which a reasonable jury could conclude that the defendant intentionally lost or misplaced the plaintiff's application for the status position "through anything other than inadvertence." *Walker v. Dalton*, 94 F. Supp. 2d 8, 15 (D.D.C. 2000) (ruling that a plaintiff cannot avoid summary judgment in an employment discrimination case merely by showing that the selection procedures were "irregular"). Indeed, the plaintiff acknowledges that the receptionist, who he alleges accepted both the status and non-status applications, did not discriminate against him. Def.'s Mot. Ex. 1 at 156-57. Moreover, nothing on the record indicates that the selecting official(s) were aware that the plaintiff had applied for the status position and then took steps to "lose" his application, or to otherwise weaken his chances of getting the position. Because the plaintiff has not shown that the defendant's reasons for not selecting him to the status collections analyst position are pretextual, the court grants summary judgment on that claim.

### (5) The Non-Status Collections Analyst Position

The defendant moves for summary judgment on the claim that the failure to select the plaintiff for the non-status collections analyst position constitutes discrimination and retaliation. Def.'s Mot. at 26. Specifically, the defendant argues that the defendant did not even consider non-status applicants because it chose a status applicant. *Id.* The plaintiff attempts to show that the defendant's proffered reason is pretextual by stating that "[t]he goal . . . is to get the best qualified candidate for the job" and by attempting to show that he was more qualified than the

individual who was ultimately selected for the position.  Pl.'s Opp'n at 23 - 25.  But, it is immaterial that the plaintiff may be better qualified than the individual selected because the defendant considered status candidates first, and, having selected a status candidate, the defendant did not consider applications from non-status candidates.  Def.'s Reply at 11.  That is, the defendant, consistent with its selection procedures, never considered the plaintiff's application for the non-status collections analyst position because it had found a suitable candidate from the status list.  The plaintiff, moreover, has not shown that the defendant intentionally altered its selection procedures so as to avoid selecting him, or that he was treated differently than any other non-status candidate.  Because the plaintiff presents no evidence to rebut the defendant's proffered explanation, the court grants summary judgment for the defendant on the claim that the plaintiff's non-selection for the non-status Collections Analyst position constitutes discrimination and retaliation.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of June, 2007.

RICARDO M. URBINA<br>United States District Judge